CECIL ODNEAL v. THE STATE.

No. 13613.   Delivered January 14, 1931.

The opinion states the case.

*Simpson, Collins & Moore* and *Leo Brewster,* all of Fort Worth, for appellant.

On appellant's contention that the evidence is insufficient to establish the offense of a conspiracy to bribe he cited: Peacock v. State, 35 S. W., 964; Evans v. State, 89 S. W., 1080; Harrison v. State, 151 S. W., 552; Woodworth v. State, 20 Texas Crim. App., 375.

On the contention that the accomplice was not corroborated, appellant cited: Art. 718, C. C. P.: Chambers v. State, 44 S. W., 495; Smith v. State, 124 S. W., 919; Jones v. State, 129 S. W., 1118; Johnson v. State, 272 S. W., 471, and others.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is conspiracy to bribe a witness; the punishment, confinement in the penitentiary for two years.

Appellant was under indictment charging him with murder. Frances Benedict was listed on the indictment as a witness, and a subpoena had been duly issued commanding her to be present in court on the 9th day of September, 1929. Graham F. Wilkins was acquainted with the witness. He also knew several young women who had been present on the occasion that appellant was alleged to have committed the offense of murder, and who were listed as State's witnesses. Virginia Morrison, who was related to appellant, had been advised by Wilkins, according to his testimony, that he contemplated making a trip to New Mexico during the month of August, 1929. Touching his meetings with appellant, Wilkins testified, in substance, as follows: After having advised Virginia Morrison that he contemplated the trip to New Mexico, she

called him to appellant's home on August 23, 1929, and introduced him to appellant. This was the first time he had met appellant. He was accompanied by Frank Huff. In the presence of Huff, appellant asked him if he was acquainted with any of the witnesses to be used on his trial. Appellant had a long list of witnesses, from which he read. Wilkins knew several of the witnesses, Frances Benedict being among them. Appellant asked him to see the witnesses and find out what they knew about the case. He wrote down the names of several witnesses he desired Wilkins to interview. Having agreed with appellant to talk to the witnesses, Wilkins left the house, but had not seen them at the time of a second meeting with appellant on August 25, 1929. In an effort to bring about a second meeting, someone telephoned Wilkin's home. Going to appellant's home, Wilkins advised appellant that he had been unable to see the witnesses. Appellant asked Wilkins for the first time if he contemplated making a trip to New Mexico. Upon receiving an affirmative answer, appellant suggested to Wilkins that the testimony of Frances Benedict would probably be hurtful to him in his trial for murder. He requested Wilkins to see if he could prevail upon the witness to go with him on his trip to New Mexico, in order that she might not be present when his case was tried. Wilkins agreed to take Frances Benedict out of the State, if she could be induced to make the trip. Later, on August 26th, appellant told Wilkins that he would pay Frances Benedict's expenses. Pursuant to the agreement between the parties, appellant and Wilkins went to a store where automobile casings were purchased by appellant. Appellant gave Wilkins $191.00 for the purpose of paying the expenses of Frances Benedict during the time she was in New Mexico.. Thereafter Wilkins took Frances Benedict and other witnesses in the case to New Mexico. They were arrested and brought back to Fort Worth prior to September 9, 1929.

Relative to the agreement had with appellant, Wilkins testified on direct examination that it was his purpose in taking the witness out of the State to prevent her from testifying in the murder case against appellant, and that pursuant to an agreement with appellant, he carried the witness out of the State. He said further that at the time he left Fort Worth he did not intend for the witness to be back in time for the trial on September 9, 1929. On cross-examination, he stated that when he left Fort Worth he expected to return by September 9th in order that Frances Benedict might be present at the trial. He declared in the same connection that he had started back to Fort Worth in time to have the witness present at the trial when he was arrested in New Mexico.

The envelope containing the names of the witnesses Wilkins had interviewed was introduced in evidence by the State. The ticket showing the sale of two automobile casings to persons unnamed on the date

testified to by Wilkins was received in evidence. The witness laying the predicate for the introduction of the ticket testified that he was unable to identify the parties making the purchase. The mother of the witness Wilkins tesified to having answered the 'phone on the occasion Wilkins said appellant called his home. She said the party calling gave his name as Cecil. She did not know appellant and was unable to identify the voice. The witness Frank Huff, who was present at the time the witness first met appellant, testified that appellant delivered a list of witnesses to Wilkins with the request that he talk to them and find out what they knew about the case. This witness stated that nothing was said at the time about Wilkins taking the witnesses out of the State. The officer making the arrest of accomplice and the witnesses in New Mexico testified only to the fact of having arrested the parties. The indictment against appellant charging him with murder and the subpoenas for the witnesses were introduced in evidence by the State.

Appellant strenuously insists that the evidence is insufficient to corroborate the accomplice Wilkins. We are of the opinion that his contention should be sustained. Article 718, C. C. P., provides, in substance, that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the accused with the offense committed. The corroboration is not sufficient under the statute if it merely shows the commission of the offense. The law demands that the corroboration with some degree of cogency tend to establish facts material and relevant which would authorize the jury to credit the testimony of the accomplice. Johnson v. State, 84 Texas Crim. Rep., 400, 208 S. W., 170. In testing the sufficiency of evidence offered to corroborate an accomplice, this court has often resorted to consideration of the corroborative evidence alone in order to see if there be in such evidence any fact which tends to point to the accused as the offender. Townsend v. State, 90 Texas Crim. Rep., 552, 236 S. W., 100.

Considering the corroborative evidence to the point that it tends to connect the appellant with the commission of the offense, we note the following: The testimony of the accomplice relative to meeting appellant for the first time on August 23, 1929, was corroborated. However, according to the testimony of the State, there was nothing improper discussed at the time. The fact that appellant wanted the accomplice to talk to some of the witnesses for the purpose of finding out what they knew about the case, and that he furnished him a list of the witnesses for such purpose furnished no incriminating circumstance against appellant. At most, this testimony showed that shortly prior to the occasion the conspiracy was alleged to have been entered into, appellant and Wilkins were together. The fact alone that the parties were together under the conditions mentioned did not tend to connect appellant with the offense of conspiracy to bribe. Millican v. State, 109 Texas Crim. Rep., 673, 7

S. W. (2d) 82; Johnson v. State, 84 Texas Crim. Rep., 400, 208 S. W., 170. Other than the accomplice, no person testified that he and appellant were together on the occasion the alleged conspiracy was entered into, or thereafter. It is true that the mother of the accomplice testified that someone giving his name as Cecil called on the 'phone and asked for appellant; but she was unable to identify the voice. The testimony touching the purchase of the automobile casings went no further than to show that two men went to Montgomery-Ward in Fort Worth and bought two tires on the date testified to by the accomplice. The salesman was unable to identify the parties. The two circumstances last mentioned have little probative value inasmuch as the parties were unable to identify the appellant. Johnson v. State, (Texas Crim. App.), 32 S. W., 1041. Standing alone, the testimony of the officer to the effect that he arrested accomplice and the witnesses in New Mexico would obviously be insufficient to meet the requirement of the statute as to corroborative testimony. It would in no sense tend to connect appellant with the commission of the offense.

In its last analysis, the testimony offered by the State to corroborate the accomplice merely showed that the parties were together shortly prior to the time of the alleged commission of the offense. Their meeting was entirely explainable upon perfectly innocent grounds, and was so explained by the testimony of the State. It is the rule that the accomplice may state any number of facts and that these may all be corroborated by the evidence of other witnesses; still, if the facts thus corroborated do not tend to connect the accused with the crime, the corroboration would not meet the requirement of the statute. Welden v. State, 10 Texas Apps., 401; Jones v. State, 39 Texas Crim. Rep. 559, 129 S. W., 1118.

Appellant timely and properly sought to have the jury instructed, in substance, that if they believed that at the time he entered into the agreement with the accomplice, if any, the said accomplice intended to return to Fort Worth and bring the witness Frances Benedict back with him upon the date the murder case against appellant was set down for trial, an acquittal should result. It appears that the accomplice testified, on direct examination, that he did not intend to bring the witness back in time for the trial. On cross-examination he said that it was his intention at the time he entered into the agreement to have the witness back in Fort Worth on September 9, 1929, in time for the trial. Under our statute there must be a positive agreement entered into between two or more persons to commit one of certain named offenses, bribry being one of these offenses. At this point we quote from Woodworth v. State, 20 Tex. Apps., 375, as follows:

"An 'agreement', as defined by Webster is 'the union of two or more minds in a thing done or to be done. A coming or knitting together of minds'. One of the definitions of the term given by Bouvier is: 'A

coming together of parties in opinion or determination; the union of two or more minds in a thing done or to be done; a mutual assent to do a thing.' Another definition quoted by the last named author is, that it 'consists of two persons being of the same mind, intention, or meaning, concerning the matter agreed upon.' "

If the accomplice did not intend to commit the offense of bribery, at the time he talked to appellant there was in fact no agreement on his part to engage in its commission. There was "no union or consert of his will with that of the defendant, and such union or consert of wills must exist to constitute a conspiracy." Woodworth v. State, supra. The issue being raised by the testimony, the court should have instructed the jury as requested by appellant.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.