# DECEMBER 18, 1940

### JAMES ALMAZAN V. THE STATE.

No. 21180. Delivered October 30, 1940.
Rehearing Denied December 18, 1940.

The opinion states the case.

*T. Gilbert Sharpe* and *Nicholas Cosgrove,* both of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense for which appellant was convicted was as an accomplice to burglary. The punishment assessed is confinement in the state penitentiary for a term of four years.

Appellant challenges the sufficiency of the evidence to corroborate Louis Loncario, the self-confessed burglar, to justify and sustain the conviction.

Loncario testified that he met appellant for the first time at a domino parlor on the corner of Medina and Commerce Streets in the City of San Antonio, Texas, about one and one-half years prior to the commission of the alleged offense; that appellant asked him at that time if he desired to make some "easy money," to which he replied that he did not; that a few days later he met appellant at about the same place, who again asked him if he desired to make some "easy money"; that he (Loncario) then inquired of him how they could make this "easy money," whereupon appellant told him that there was a trap door in the floor of the Alamo Pecan Shelling Company building, through which he could get into the building, steal pecans and sell them; that thereafter he did enter the building many times at night through the trap door, steal pecans, sell them and give appellant one-half of the proceeds of the sale. Loncario testified that the trap door was not always at the same place; that sometimes it would be in the toilet, sometimes in the middle of the floor and sometimes at another place. He said that on two

occasions when he was in the building at night committing theft other parties would come into the building through the trap door and also commit theft; that during the times when such other parties were in the building he would hide until they left and then he would leave with his loot. He claimed that at no time was the appellant present or did he in any way aid him in the burglary except to make the trap door and advise him as to where it was. He said that he was in the building on Sunday a short time before he was caught.

While this testimony would show appellant to be an accomplice to the offense of burglary, yet, under Article 718, C. C. P., this is not sufficient to justify his conviction unless there is some testimony from other sources which corroborates Loncario upon some material and criminative fact tending to connect appellant with the commission of the offense charged.

Now, let us take the testimony of the witness, Jack Horkheimer, the owner of the Alamo Pecan Shelling Company, and see if it corroborates the testimony of Loncario upon some material part. We quote from his testimony as follows:

"I know James Almazan. * * * He was employed by me a little over three years to take care of the cracking machine and to make whatever minor repairs were necessary to the building and the general equipment. He was a sort of a foreman of that department. * * * I did not have a regular night watchman, but on occasions I would leave a man there, but when I did so none of my employees knew I was leaving a night man. Almazan knew a night man was being left there. The door was not padlocked on the outside, but was bolted on the inside. * * * James Almazan had done a little repair work around there. He looked after the carpenter work on the floor. No one did any work on the floors except Almazan. I have seen him in the men's toilet, and there was some work done in front of one of the toilets some two or three months before this man was caught."

"I made an examination of the premises on the occasion this man was caught in there, and I had occasion to look at the men's toilet. This man took us there, and he showed us how he got in. When he took us to this wash room I found practically a normal floor, and he took a screw driver or something * * * and took this board up. * * * You will notice the nails have been clipped. This board set on two sills and had wing nuts on it. You could not notice it was loose from the inside of the toilet. *. * * Loncario had the wing nuts in his pocket."

On cross-examination the witness testified: "He (Almazan) repaired the floor portion of the toilet, he having said that there was a weak board in there that should be replaced and I told him to go ahead and replace it. I did not at any time inspect it either before or after he repaired it. I spend the majority of my time in the building. There were other people in the toilet. As to whether or not one of the other employees might have put that board in there, I will say I know only by the fact it would not seem logical to me that some one who was employed to do one job would gratuitously do another. * * * That is my opinion."

Horkheimer further testified that he knew appellant well; that he loaned him money when he would get behind in the payments on his automobile, and he would pay him back out of his wages. "This was during the time I was losing the pecans. I never saw anything which led me to believe that he had any other source of income than what I paid him."

Amando Flores testified that he had worked for Mr. Horkheimer about five years and was still working for him; that he saw Almazan fixing the floors some two or three different times; that he never saw anyone else work on the floors; that whenever Almazan was fixing the floors there were a lot of people working and everybody could see him around there.

Jack Hart, who was employed by Horkheimer to watch the building and who was in the building on the night in question, testified, among other things, as follows: "I saw the trap door in the rest room when he (meaning Loncario) showed it to me. I could not see it before he showed it to me. This board you exhibit here is what he showed me. It was in the floor."

Oscar Velber testified, among other things, as follows: "These boards were in the men's toilet. * * * They were part of the floor and it would hold a person's weight. When they were in place you could not notice that there was such a board in the floor. * * * One end of this rested on the joist, and you could step on it and it would not give. This board was in the middle of the floor in the men's toilet. There are plenty of boards like that all over the building. That building has a patched-up floor. He (Horkheimer) employed about three hundred people and part of them were men."

Mr. Lankford, a city detective, testified that he was summoned to the Alamo Pecan Shelling Company building on the night in question; that he asked Louis Loncario how he got into the building. He said that he got in through the floor. From the testimony of the witness we quote: "He (meaning Loncario)

took us to the men's toilet, and we found there a board about eighteen inches long. * * * It appeared to be a regular floor board. This man reached down with his finger and pulled the board out. I searched the man and found on him a car key, or set of car keys, and two nuts that fit that bolt."

Mr. Hardcastle, another city detective, testified, among other things, as follows: "Loncario gave his name as Albert Unis. I had a conversation with him and asked him how he got in and he said he was locked in; and he took us to the men's toilet and showed us where he came through. * * * I saw this trap * * * and it had a thumb bolt * * * and you could screw this down. * * * After we had him at the office and talked to him, we made the remark that it was an inside job and that it looked like he was on the spot, and he said, 'Well, I will tell you everything.' He described the other man, and Mr. Horkheimer called this man's name and we went out and got him and brought him in. Loncario identified this man. * * * When he got in there he did not know the man's name, but he described him * * * his height and weight. He also said he had been working with the boy for over a year. He did not know his name. He called him Joe."

The foregoing are the salient facts testified to by the witnesses, and in our opinion are insufficient to meet the requirements of the law.

In the case of McInnis v. State, 54 S. W. (2d) 96, this court, speaking through Judge Hawkins, said:

"Evidence which corroborates the accomplice witnesses only on immaterial facts is not sufficient. To meet the requirements of the statute it must be as to some criminative fact which tends to connect accused with the commission of the offense charged. (Authorities cited.) The corroboration may, of course, consist of proven circumstances, as well as direct evidence, and, where the State relies upon circumstances proven by various non-accomplice witnesses, the rule has been stated in Minor v. State, 108 Texas Cr. R. 1, 299 S. W. 422, 429, as follows: 'It is the combined and cumulative weight of the evidence furnished by nonaccomplice witnesses which supply the test. If by this rule it appears on appeal that before the jury there was proof confirming the testimony of the accomplice (witness) to material facts tending to connect the accused with the * * * offense, the law is satisfied.'

"Of course, it must be understood in this connection that the combined and cumulative testimony of the nonaccomplice wit-

nesses would not be as to material facts, unless the facts established by this combined and cumulative testimony were of a criminative character, that is, such as tended to connect accused with the commission of the offense charged."

In the case of Fields v. State, 98 S. W. (2d) 209, this court said: "Our statutes will not permit a conviction of one accused of crime upon the uncorroborated testimony of an accomplice or accomplices. Therefore, the State was required to corroborate the accomplice witnesses upon material facts which tended to connect the accused with the commission of the offense. In determining the sufficiency of the corroborating testimony, we usually eliminate the testimony of the accomplice from consideration and look to the other testimony of the case to ascertain if it tends to connect the accused with the commission of the offense. If so, the corroboration is sufficient; if otherwise, it is not. Applying the foregoing rule to the testimony disclosed by this record, we do not believe that the facts of this case meet the requirements of the law. That appellant, Echols, Pierce and Board were seen together on the streets of Sherman between 6 and 7 o'clock prior to the alleged burglary, and that appellant and Echols went to the home of Echols' father and talked to some person over the telephone, who they took to be Pierce's wife, and that they were seen together the next day, does not tend to connect appellant with the commission of the offense."

See, also, Clark v. State, 99 S. W. (2d) 927.

In the present instance, there is not any evidence from any source that appellant and Loncario were ever seen together; that Loncario at any time ever gave any money to the appellant as part of the proceeds from the sale of the pecans. There is no evidence that appellant, during the time of the theft as related by Loncario, ever had any income from sources other than his wages. No one saw the appellant under the building putting the nuts on the bolts by which the plank was held in position, although many persons were employed and were working in the building; nor is there any evidence that appellant did any work on the floor except during business hours. It occurs to us that no one could have put the wing bolts in there and fastened the nuts unless he got under the building, because Loncario could not remove the nuts from the bolts except from the outside of and under the building. Consequently the only evidence which might be deemed to corroborate Loncario is the fact of a trap door in the building, not that appellant put it there but

that he had the opportunity to place it there. Who made the trap door in the middle of the building through which Loncario entered on former occasions? Was it the appellant? If so, why did Loncario fail to say so?

Having reached the conclusion that the testimony of the accomplice has not been sufficiently corroborated on material and incriminative facts to sustain the appellant's conviction, it is therefore ordered that the judgment of the trial court be and the same is hereby reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON REHEARING.

BEAUCHAMP, Judge.

The State's motion filed in this cause reviews the testimony upon which it relies to find corroboration for the accomplice witness.

We have considered the testimony of each witness referred to in the motion and conclude with the language of the State's attorney that, "the finger of suspicion points to the appellant and the appellant alone," by reason of such testimony. However, suspicious circumstances are not sufficient, standing alone, to corroborate the testimony of an accomplice witness.

One proposition of law is asserted in the motion which we desire to notice. It is said that the law does not require that all of the essential facts be corroborated. We think that all of the essential facts must be corroborated by circumstances or otherwise than that of the evidence of the accomplice, and they must be more than merely suspicious circumstances. A chain is no stronger than its weakest link, and if the State must rely on the accomplice's testimony for some material fact without any corroboration whatsoever, the conviction cannot stand. It is unfortunate that designing criminals sometimes so lay the scene of their activities that there is great difficulty in proving their guilt, and more unfortunate still is it that frequently the State is not able to do so, but such is no argument in favor of a rule which would permit the conviction of innocent people on the testimony of a party or parties involved in the crime, or that reliance may be had on, "the finger of suspicion." For the purpose of corroborating testimony which is considered

too unreliable to take human liberty, something stronger is required than mere suspicion. This Court has always so held.

Furthermore, it is implied by the State in its motion for rehearing that if the accomplice is corroborated in one essential fact, that may be sufficient to sustain the verdict. If the brief presenting the question is to be so understood, then our position should be made clear that every essential fact testified to by the accomplice alone must be corroborated by nonaccomplice testimony tending to connect appellant with the commission of the offense charged. It is conspicuously lacking in this case in one particular, in that there is no evidence showing that appellant had any connection with this accomplice witness. He testified that appellant would meet him at a certain place and they would divide the money. This connects appellant with the offense, but there is no evidence to corroborate this, without which the State's case must fall.

If we should assume that there is evidence showing that appellant had constructed the trap doors in the floor as a means of entrance to commit theft, it may be pointed out also that the evidence shows other people entered through this same trap door for this purpose. It could as well be assumed, in the absence of proof connecting appellant with the particular crime charged, that the witness gained his information about the opening in some other way than from appellant. In all events, the evidence must connect appellant with Louis Loncario and with the offense which he committed. This the State has failed to do, as pointed out in our original opinion, the reasoning of which, after further consideration, is adhered to.

The motion for rehearing is overruled.