**Robert Niel RUNKLE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 44984.**

Court of Criminal Appeals of Texas.

June 14, 1972.

Rehearing Denied Oct. 18, 1972.

Doran, Gulley & Murrah by Haygood Gulley, Del Rio, for appellant.

John F. Pettit, Dist. Atty., Del Rio, and Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of murder with malice. Punishment was assessed by the jury at confinement for a term of ninety-nine years.

Three grounds of error are alleged, all challenging the sufficiency of the evidence to corroborate the testimony of the accomplice witness and the sufficiency of the court's charge regarding the accomplice witness.

On April 2, 1970, Lloyd Mercer was employed by the Southern-Pacific Railroad as head brakeman on a train proceeding east from Del Rio to San Antonio. At approximately 9:30 P.M., while watching for obstacles along the track, he observed a body lying on the north side of the track at a point approximately seven miles from Spofford. The body was located at mile post 333.48 about seventy-five feet from a trestle. The body had not been there when the train had passed that point five hours earlier. It was wrapped in what appeared to be a dark coat. Mercer reported the incident to the conductor who alerted local authorities.

At approximately 10:10 P.M. on that same evening, John Caffee, an assistant special agent for the Southern Pacific Railroad, received a report concerning the finding of the body. He and A. L. Casper, a road master for the railroad, proceeded to a spot 7.22 miles east of Spofford where, at approximately 11:25 P.M., they found the body of the deceased lying approximately three feet from the ties on the north side of the tracks. Forty feet south of the railroad tracks was a farm to mar-ket road. West of the point where the body was located was a trestle bridge over a creek. The tracks were built upon an embankment which, at this point, was eight to nine feet above the road. The body was not visible from the road.

They discovered that the top portion of the body was covered with heavy black plastic shipping paper. Lifting the top edge of the paper, they ascertained that the deceased was male and observed a rope around his neck and blood on his face. Preliminary investigation by Caffee revealed that the ballast beside the tracks was not disturbed, as it would have been had the body been thrown from a passing train. Caffee then attempted to notify Kinney County Sheriff John A. Sheedy; and upon learning that Sheriff Sheedy was already on his way to the scene, Caffee awaited the sheriff's arrival before investigating further.

Sheriff Sheedy arrived shortly thereafter, accompanied by Albert Postell, the Coroner for Kinney County. An examination of the body revealed that the deceased was wearing two pairs of pants, a "tee shirt", a regular shirt, a sport coat, and socks. The officers also determined that he weighed between 150 and 160 pounds and was approximately forty-five years old. Inside the watch pocket of the inner pair of pants worn by the deceased the officers found two twenty dollar bills. Other miscellaneous items were discovered in the pockets of the sport coat.

Fifteen feet west of the bridge, on the north side of the tracks, the officers discovered a broken pair of eye glasses and a bloody wine bottle. More blood was discovered sixty-one feet west of the body. In the creek bed, two large sheets of brown paper with blood on them were recovered. Within six feet of the body more of the blood-stained paper was found. The officers also discovered pieces of a broken wine bottle, several pieces of ⅛ inch grass rope, a bill-type cap, and some letters addressed to one James A. Key.

An ambulance was called, and the deceased was taken to a funeral home in Del Rio. At the funeral home, Del Rio Police Chief J. R. Koog obtained deceased's fingerprints. Identification of these fingerprints revealed that the deceased was James Alexander Key.

Caffee, meanwhile, checked the train schedules and learned that seven trains had passed the point where deceased had been found on that day, three of these having passed this point after 6 P.M.[1] One of these, a west bound freight train, had been stopped there at 7:10 P.M. due to signal problems.

At 3:30 A.M. on April 3, 1970, that train made an unscheduled stop in Alpine. There, it was surrounded by law enforcement officers and searched. In a blue boxcar bearing number L & N 102468, Highway Patrolman Joe Hicks found appellant and James Frederick Franks. The officers removed the two men from the boxcar and placed them under arrest. A preliminary search of the boxcar was conducted by Deputy Mike Stutts of the Brewster County Sheriff's Office. Found in the car were a receipt bearing the deceased's name, a pocket knife, a piece of blood-stained cardboard, pieces of a broken wine bottle, a comb, a fingernail clipper, and some loose change.[2]

The train then proceeded to Valentine, Texas, where boxcar numer L & N 102468 was left on a side track and again searched by Texas Ranger Arthur Hill. Ranger Hill discovered blood spots on the wall of the boxcar and other blood spots just outside of the door. Scrapings were taken at each place. Also recovered were some blood-stained paper and pieces of a broken wine bottle.

At 1:30 P.M., on April 3, 1970, an autopsy was conducted on the body of the deceased by Dr. Ruben C. Santos, Chief Medical Examiner for Bexar County. In Dr. Santos' opinion, ". . . there was no question that this man met his death by violence by asphyxia, by compression of the neck by some kind of artifact; by rope or something like that."

The evidence which had been gathered in this case was sent by Sheriff Sheedy to the Crime Laboratory at the Department of Public Safety in Austin. Chemical analysis revealed the presence of human blood on the rope taken from around the deceased's neck, on the black plastic paper which had covered the deceased, and on the paper found near the location of the body. The scrapings taken from the boxcar were also found to be human blood.

A joint indictment was returned against appellant and Franks charging them with the murder of James Alexander Key. Prior to appellant's trial, Franks' motion for severance was granted. The record reflects that at the time of appellant's trial, a motion to dismiss as to Franks was granted. Franks testified at appellant's trial and was declared by the court, in the charge to the jury, to be an accomplice witness as a matter of law.

Franks' testimony reveals that he, the deceased, and appellant boarded a boxcar in San Antonio. All three had been drinking wine heavily, and appellant and deceased were arguing. Franks went to sleep but was later awakened when a fight occurred between appellant and the deceased. Franks grabbed the deceased and held him while appellant allegedly placed a rope around the deceased's neck and began to choke him. Franks became tired and went back to sleep. When he awoke, he was in-

1. The record reflects that two westbound trains passed this point after 6:00 P.M., one at 7:10 P.M. and one at 11:00 P.M. The third train was the eastbound train upon which Mercer was riding when he saw the body.

2. Two other men were removed from another boxcar on the train but were not held in connection with the instant case.

formed that Key was dead. Franks then assisted appellant in wrapping the body in a plastic material, placing the body beside the tracks when the train stopped, and throwing various items off of the train.

Article 38.14, Vernon's Ann.C.C.P., provides:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

Recently, in Reynolds v. State (No. 44,-841 5–3–72), this court held that:

"The test for determining the sufficiency of such corroboration is to eliminate the evidence of the accomplice from consideration and then ascertain whether there is other evidence of an incriminating nature which tends to connect the accused with the commission of the offense. E. g. Colunga v. State, Tex.Cr.App., 481 S.W.2d 866; Cherb v. State, Tex.Cr. App., 472 S.W.2d 273; Thomas v. State, 166 Tex.Cr.R. 331, 313 S.W.2d 311; Welden v. State, 10 Tex.App. 400. The mere showing that an offense occurred is not sufficient corroboration. Colunga v. State, supra; Odom v. State, Tex.Cr. App., 438 S.W.2d 912; Edwards v. State, Tex.Cr.App., 427 S.W.2d 629. Thus, evidence which verifies extraneous matters without tending to connect the accused to the crime is insufficient."

■ The corroborative evidence is sufficient if the cumulative weight of such evidence tends to connect the accused with the crime. There is no requirement that the corroborative testimony link the accused directly to the crime or be sufficient in itself to establish guilt. E. g. Reynolds, supra; Cherb v. State, supra.

■ In the instant case the evidence shows that: (1) the body of the deceased was found at 9:30 P.M. on April 2, 1970; (2) the cause of death was strangulation; (3) the body had not been at this location at 4:00 P.M. on that day; (4) a west bound freight train had stopped at 7:10 P.M. on that evening at the point where the deceased's body was found; (5) it appears that this was the only train stopped at that point on that date; (6) the ballast beside the tracks at the place where the deceased was found was not disturbed; (7) this same train was stopped at Alpine approximately eight hours later; (8) appellant and Franks were found in a boxcar at that time; (9) samples of human blood were found inside the boxcar; (10) a receipt bearing the deceased's name was found inside the boxcar; and (11) broken wine-bottle glass and bloodstained paper were found both in the boxcar and at the place where the body was found.

The evidence places appellant in a boxcar on the train which had stopped at the place where the deceased was found. Edwards v. State, supra. Such evidence places him in a boxcar on that train in which a struggle occurred and in which a receipt belonging to the deceased was found. Physical evidence, such as bloody paper and broken wine bottles, was found both in that boxcar and beside the body.

Thus, unlike Reynolds v. State, supra, the corroborative evidence presents circumstances from which a reasonable juror could infer that appellant was at the place where the crime was committed at the time such crime was committed. We hold that there is sufficient circumstantial evidence, absent the testimony of the accomplice, to link the accused to the crime.[3]

The court's charge regarding the accomplice's testimony is substantially the same charge that was approved by this court in Burton v. State, 442 S.W.2d 354. See also,

---

3. We do not pass on the sufficiency of this evidence to support a conviction had the accomplice not testified.

Branch's Ann.P.C.2d, Sec. 747.1. No error is shown.

Finding no reversible error, the judgment is affirmed.

ONION, Presiding Judge (dissenting).

The principal question presented by this appeal is whether the evidence is sufficient to corroborate the testimony of the accomplice witness James Frederick Franks. This witness was jointly indicted with the appellant, but prior to his testimony was offered immunity by the prosecution.[1] Franks' testimony made out a complete case against the appellant. On cross examination, Franks, age 38, admitted he had a mental condition from the time he was 8 to 11 years old; had been in various mental institutions; had been convicted of at least five crimes; had been under care of psychiatrists at various prisons; had been in a mental institution earlier in the year at Raleigh, North Carolina, and was taking two Thorazine tablets a day at the time of the trial.

The court charged on the law relating to accomplice witnesses and instructed the jury that Franks was an accomplice witness, as a matter of law. The jury, by its verdict, obviously found Franks' testimony to be true. The question presented is whether, as a matter of law, the evidence is sufficient to corroborate such testimony.

Article 38.14, Vernon's Ann.C.C.P., provides,

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; *and the corroboration is not sufficient if it merely shows the commission of the offense."* (Emphasis supplied.)

In Edwards v. State, 427 S.W.2d 629, 632 (Tex.Cr.App.1968), this court said:

"The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain if there be *inculpatory evidence,* that is *evidence of incriminating character which tends to connect the defendant with the commission of the offense.* If there is such evidence, the corroboration is sufficient; otherwise, it is not. Dalrymple v. State, Tex.Cr.App., 366 S.W.2d 576; Bradford v. State, 170 Tex.Cr.R. 530, 342 S.W.2d 319." (Emphasis supplied.)

See also Reynolds v. State (Tex.Cr.App. 5–3–72, No. 44,841).

Therefore, it is clear that evidence, independent of the accomplice witness' testimony, which merely shows the commission of the offense, or which, although corroborative in some respects of the accomplice witness' version, is not of incriminating character tending to connect the accused with the crime, is insufficient to sustain a conviction.

As stated in Umsted v. State, 435 S.W. 2d 156 (Tex.Cr.App.1968),

" . . . The accomplice may state any number of facts, and these facts may all be corroborated by the evidence of other witnesses; still, if the facts thus corroborated do not tend to connect the defendant with the crime, or if they do not point pertinently to the defendant as the guilty party or as a participant, this would not be such corroboration as is required by the code. . . ."

See also Odneal v. State, 117 Tex.Cr.R. 97, 34 S.W.2d 595 (Tex.Cr.App.1931).

With this background, it is noted the majority states that the evidence reflects that:

(1) the body of the deceased was found at 9:30 P.M. on April 2, 1970; (2) the

---

1. The record is not clear whether the court acted upon such offer of immunity.

cause of death was strangulation; (3) the body had not been at this location at 4:00 P.M. on that day; (4) a west bound freight train had stopped at 7:10 P.M. on that evening at the point where the deceased's body was found; (5) it appears that this was the only train stopped at that point on that date; (6) the ballast beside the tracks at the place where the deceased was found was not disturbed; (7) this same train was stopped at Alpine approximately eight hours later; (8) appellant and Franks were found in a boxcar at that time; (9) samples of human blood were found inside the boxcar; (10) a receipt bearing the deceased's name was found inside the boxcar; and (11) broken wine-bottle glass and blood-stained paper were found both in the boxcar and at the place where the body was found."

With the possible exception of No. (8), when this evidence is carefully considered, it reflects merely the commission of the offense or is corroborative of part of the accomplice witness' story, but it is not of an incriminating character tending to connect the accused with the crime. This does not meet the test required by law.

As to item No. (8), it is true that approximately eight hours after the train in question stopped near the point where Key's body was found, and approximately 250 miles away, the appellant and the accomplice witness were found together in the same boxcar.

In certain instances, association with the accomplice witness may be corroborative of the testimony of an accomplice. It has been held though that it is not sufficient corroboration merely to show that they were together shortly before or shortly after the commission of the offense. 23 C.J. S. Criminal Law § 812(4)(g), p. 119; Crawford v. State, 149 Tex.Cr.App. 581, 197 S.W.2d 575 (1946), and other Texas cases cited in 23 C.J.S. Criminal Law § 812 (4)(g), supra.

In the instant case, there was no independent proof that the accused was at or near the scene of the crime at or about the time of its commission. *Cf.* Cawley v. State, 166 Tex.Cr.R. 37, 310 S.W.2d 340 (1957).

Outside of the accomplice witness' testimony, there is no showing how long the appellant had been on the 50 car train when it made its unscheduled stop at Alpine approximately 250 miles from the point where the body was discovered and over approximately eight hours after such stop.

The appellant was not in possession of any items shown to belong to the deceased nor was there any blood on his clothing even though his blue shirt was examined by a chemist. There was no evidence of any marks or bruises on appellant to indicate he had been involved in a fight or struggle. While samples of human blood were found inside the boxcar and on and near the body, the blood type was not shown so as to connect the samples. Nor was the blood type of the deceased revealed.

While broken wine-bottle glass was found in the boxcar and near the position of the body, there was no showing the glass found in one place was the same color or similar in appearance, etc. as that found in the other place.

Although nearly all the items found inside the boxcar and on or near the body were submitted for fingerprint examination, there was no testimony offered concerning the same.

Dr. Ruben Santos who performed the autopsy did not testify how long the deceased had been dead at the time of the body's discovery or at any other time.

There is nothing outside the accomplice witness testimony to show that the appellant was with the deceased at or about the time of the alleged homicide. See Andrews v. State, 106 Tex.Cr.R. 366, 292 S. W. 217 (1927).

**918**

"For the purpose of corroborating testimony which is considered to take human liberty, something stronger is required than mere suspicion." Almazan v. State, 140 Tex.Cr.R. 432, 145 S.W.2d 576, 579 (Tex.Cr.App.1940).

See also Thomas v. State, 166 Tex.Cr.R. 331, 313 S.W.2d 311 (1958).

Applying the test we are required to apply I can find no independent evidence of an incriminating nature tending to connect the appellant with the commission of the alleged crime so as to be sufficiently corroborative of the accomplice witness' testimony.

I respectfully dissent.