**Arthur LYMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 51836.**

Court of Criminal Appeals of Texas.

Sept. 15, 1976.

James J. Crook, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and William J. Ellis, Asst. Dist. Atty., El Paso, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GUPTON, Judge.

This is an appeal from convictions for two counts of aggravated robbery under V.T.C.A., Penal Code, Sec. 29.03, joined under V.T.C.A., Penal Code, Sec. 3.02(a). The court assessed punishment at 25 years on each count, the sentences to run concurrently.

The record was approved in the trial court on August 22, 1975. On October 16, 1975, appellant filed a motion for extension of time in which to file the brief until November 1, 1975. This request was granted by the trial court; however, appellant's brief was not filed until November 6, 1975. See *Coleman v. State*, Tex.Cr.App., 530 S.W.2d 823; *Gowans v. State*, Tex.Cr.App., 522 S.W.2d 462.

A review of the record indicates the sufficiency of the evidence to corroborate the accomplice witness testimony should be discussed as unassigned error. See Art. 40.09, Sec. 13, V.A.C.C.P.

The evidence reflects on November 17, 1974, at about 6 p. m. a man and his wife were robbed and abducted from their recreational vehicle, escorted into the desert, forced to partially disrobe, and shot two or three times in the head. State's witness Plourde admitted committing these acts of violence and implicated appellant.

Plourde testified he and appellant met in Pennsylvania and traveled together to Texas. They decided to rob and to steal a camper to sell later in New Mexico. They spotted the complaining witnesses' Winnebago in a rest area and appellant told Plourde, "That's our camper." Appellant gave Plourde a loaded pistol and waited until Plourde returned with the camper. Appellant, driving his car, and Plourde, in the Winnebago, proceeded toward the Union 76 Truck Stop. After a few miles, Plourde thought the camper was running out of gas and he signaled appellant to stop. Appellant pulled off the road and walked back to the Winnebago and agreed to stop for gas. Shortly thereafter, the Winnebago stalled and appellant told Plourde not to stop again. Appellant took some money from Plourde during one of these stops. As Plourde entered the driveway of the truck stop, he was arrested.

The non-accomplice witness testimony can be summarized as follows. Appellant's black over yellow Dodge Charger with Utah license plates was seen at the rest area by Mr. Wardrop, one of the injured parties, immediately before the alleged offense. However, Mr. Wardrop did not see anyone in or near the car. Twice during the robbery and attempted murder Plourde mentioned he had a buddy with him, but Mr. and Mrs. Wardrop neither saw nor heard another person.

Officer Lee stated that he saw appellant's car parked on the side of the road in front of the Winnebago motor home shortly after the offense. He saw two men standing by the road talking. Officer Lee was not close enough to make an identification of the man who sped off in the Dodge Charger as

he approached the scene. Officer Lee followed the Winnebago to the Union 76 Truck Stop and he arrested Plourde around 7:15 p. m. Appellant drove to the scene of the arrest and inquired as to what was going on. Appellant was then taken into custody as a material witness. Other officers with the El Paso County Sheriff's Office conducted a thorough search of both vehicles.

A search of the trunk of appellant's car revealed a red windbreaker with a human head hair on it. An expert witness testified the possibility that the hair came from someone other than Mrs. Wardrop was remote. Inside the windbreaker was a Pennsylvania hunting license issued to accomplice witness Plourde. In the dashboard ashtray of appellant's car was found a partial box of .22 caliber long rifle cartridges (State's Exhibit 55). The 16 cartridges in the box were analyzed and tested along with State's Exhibit 22, a Harrington and Richardson .22 caliber revolver that was found in the Winnebago and identified·by Plourde as the gun appellant gave him, and State's Exhibit 56, three live rounds and three expended .22 hulls that were in the revolver at the time it was seized by police. The State also introduced, as State's Exhibit 32, a partially mutilated .22 caliber bullet that was recovered from the white slacks Mrs. Wardrop was wearing at the time of the offense. Special Agent Asbury of the FBI testified that the rifling impressions on State's Exhibit 32 were the same type of impressions as those on bullets that had been test fired from State's Exhibit 22. He said that State's Exhibit 32 was either fired from State's Exhibit 22 or from another weapon which produces the same type rifling impressions as to number of lands and grooves and direction of twist. He stated that the three cartridge cases in State's Exhibit 56 were fired from State's Exhibit 22 to the exclusion of all other weapons in the world. He further testified that State's Exhibit 32 was similar in all observable characteristics to the cartridges found in appellant's automobile and the live rounds in the revolver.

Special Agent Riley, also of the FBI, conducted a neutron activation analysis test on a sample of lead from State's Exhibits 55 and 56. One of the three live rounds in the revolver matched one of the 16 cartridges removed from appellant's automobile. The mutilated bullet (State's Exhibit 32) was of similar composition to one of the 16 cartridges (State's Exhibit 55) and could have come from the same source of lead or from another source of lead having the same composition.

Numerous other scientific tests were conducted. Hairs found under the grips of the pistol exhibited the same microscopic characteristics as hairs taken from Mrs. Wardrop. Blood samples and papers found in appellant's automobile were analyzed, but the results of these tests were of little if any, probative value. Two latent fingerprints lifted from the Dodge Charger matched known prints of Plourde and three latent prints were identified as being appellant's. No prints were recovered from the Winnebago.

Witness Highfield testified she and her husband were at the rest area at approximately 5:30 p. m. on the day of the alleged offense. She saw two men in a car which looked like appellant's car as it was depicted in photographs introduced by the State. She could not identify appellant as being one of the men in the car at that time.

Officer Gomez transported appellant and Plourde from the Union 76 Truck Stop to the police station. He testified without objection that the following occurred:

"Q Did he [appellant] say anything or state anything with reference to the person that you had in custody, Mr. Plourde?
A Yes, sir. En route down there he asked defendant Plourde if he knew him and said, 'Say, buddy, why don't you tell this man here'?
Q And what else did he say?
A He advised Mr. Plourde to—he said, 'Say, buddy, look do I know you? Why don't you tell this man here that I have never seen you before'? 'Are you one of the hitchhikers I have picked up here a couple of days ago'? At this time I ad-

vised him to keep quiet and just sit there."

Gomez further stated that he saw appellant and Plourde motioning to each other later as Gomez was taking a statement from Plourde in the sheriff's department. Gomez demonstrated the gestures and said at the time it indicated to him the two men knew each other. Gomez later interpreted Plourde's gesture to be asking appellant where Plourde's wallet was and appellant's gesture indicated he had thrown it away.

▮ The issue is whether there is inculpatory or incriminating evidence which tends to connect appellant with the commission of the offense. Possession by the accused of fruits of the crime tends to connect him with the commission of the crime and may be sufficient corroboration of accomplice witness testimony. *Edwards v. State*, Tex.Cr.App., 427 S.W.2d 629. The evidence would not be sufficient corroboration if it merely showed the commission of the offense or that the accomplice and appellant were together shortly before or shortly after the commission of the offense. Art. 38.14, V.A.C.C.P.; *Runkle v. State*, Tex.Cr. App., 484 S.W.2d 912 (Dissenting Opinion). However, the corroborative testimony need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Cherb v. State*, Tex.Cr.App., 472 S.W.2d 273.

In *Edwards*, supra, defendant was placed in the presence of the accomplice witness near the scene of the crime at or about the time of its commission in the early morning hours without any reasonable explanation therefor. Defendant immediately thereafter traveled to Hamilton and then to San Antonio, which was considered flight. Although defendant was not in possession of any fruits of the crime, he was with the accomplice the day after the crime in a pawn shop trying to sell a gun that had belonged to the deceased. This was held sufficient evidence to corroborate the accomplice witness testimony.

In *Runkle*, supra, defendant was found in a box car on the only train that had stopped at the point along the tracks where a body was found. In the box car were found a receipt bearing deceased's name, a pocketknife, a comb, a fingernail clipper, and loose change. Blood spots were found on the wall of the box car and outside the door. Bloody paper and broken wine bottle pieces were found in the box car and beside the body. In holding the circumstantial evidence sufficient to link the accused to the crime, this Court stated, "The corroborative evidence presents circumstances from which a reasonable juror could infer that appellant was at the place where the crime was committed at the time such crime was committed." *Runkle*, supra, at page 915.

In *Rodriquez v. State*, 508 S.W.2d 80, this Court held evidence which placed defendant in the company of the accomplice witness across the street from where the murder occurred shortly before its commission and testimony as to the description of one of the assailants which was consistent with defendant's physical appearance at the time of the offense sufficient corroboration of the accomplice witness testimony. As in *Edwards*, the offense occurred in the early morning hours.

▮ We find the non-accomplice testimony in the instant case presents circumstances from which a reasonable juror could infer that appellant had been in the rest area with Plourde at or near the time of the robbery and that appellant had been in possession of the instrumentality of the crime, the .22 caliber revolver, shortly before the commission of the offense. The evidence also shows that appellant was with Plourde immediately after the commission of the offense and appellant had possession of the accomplice's windbreaker with the injured party's hair. Although appellant did not attempt to flee, but rather voluntarily approached the police, appellant did try to deny that he knew accomplice witness Plourde. This evidence tends to connect appellant with the commission of the offense and is sufficient corroboration of the accomplice witness testimony.

The judgment is affirmed.