



## MEMORANDUM OPINION

No. 04-10-00087-CR

Roger **SOLIZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CR-0755B
Honorable Mary D. Roman, Judge Presiding

Opinion by:   Phylis J. Speedlin, Justice

Sitting:      Karen Angelini, Justice
              Sandee Bryan Marion, Justice
              Phylis J. Speedlin, Justice

Delivered and Filed:  January 19, 2011

AFFIRMED

Roger Soliz challenges his convictions for aggravated robbery, arguing the evidence at trial was insufficient to corroborate the accomplice testimony.  Soliz also raises a claim of ineffective assistance of counsel.  We affirm the judgment of the trial court.

### BACKGROUND

Soliz was indicted for aggravated robbery with a deadly weapon (habitual).  The 5-count indictment stemmed from a robbery which occurred at Metro News Service, a telemarketing

business located on Fredericksburg Road, on November 1, 2008. There were twenty employees present that day. At trial, the five complainants named in the indictment—Albert Martinez, Kim Ryle, Brenda Rodriguez, Diane Gonzalez, and Rebecca Calles—testified, as did three unnamed complainants. The witnesses stated that at about 1:20 p.m. on Saturday, November 1, 2008, three men entered their office and robbed them.[1] One man carried a firearm described as a shotgun. He was described as tall, slender, and African American. Even though his face was covered with a ski mask, all the victims unequivocally recognized him as their co-worker, Darrell Johnson. Johnson was recognized by his voice and his mannerisms, and even by the shoes he was wearing. The other suspects were described as Hispanic, and of the two, one was short and one was taller, but not taller than Johnson. All three were dressed in dark clothing and their faces were covered. Most victims paid little attention to the taller Hispanic suspect, but Rebecca Calles stated he held a knife to her back; the same suspect also held a knife to Albert Martinez's throat. After their demands for money failed, the robbers searched the victims' pockets and purses for items of value, taking purses, wallets, cell phones, and jewelry.[2] They took two rings, a watch, two cross necklaces, a bracelet, and a pair of earrings from Martinez. The robbers left through the back door, which led to an alley. Some of the victims ran after them, and saw the robbers flee in a green Volvo sedan and turn right on Fredericksburg Road headed towards Loop 410. The victims described seeing four people in the green Volvo.

Jonathan Perez testified as an accomplice witness. Perez admitted that he, Soliz, Darrell Johnson, and Valentin Suniga committed the robbery, and that he supplied the shotgun that was

---

[1] One witness, Norma Pacheco, who described herself as "hysterical" at the time of the robbery, stated that she did not know how many robbers entered the building, only that she heard more than one voice.

[2] The Metro News employees were normally paid on Saturday before lunch; they would use their lunch break to cash their checks at a nearby check-cashing business and then return to work to finish out their shift. Albert Martinez, the business manager, testified that on that particular Saturday, he did not pay his employees before lunch, as was his custom, because the employees were going to have to stay longer than usual to meet their sales quota that day.

used by Johnson. He stated that the four of them traveled to and from the robbery in a green Volvo. Suniga drove and remained in the car during the robbery. After the robbery they pawned some of the stolen jewelry at a shop on Five Palms and Old Pearsall Road. While Suniga was pawning the jewelry, Perez, Johnson, and Soliz walked to a nearby restaurant where they met Soliz's mother and her boyfriend. They agreed to park the Volvo in the backyard of Soliz's mother's house. Once at Soliz's mother's house, her boyfriend drove Perez home in a blue Oldsmobile. Perez acknowledged that he entered into a plea agreement with the State in exchange for his testimony at Soliz's trial.

Shortly after the robbery, Detective David Lozano arrested Johnson. Johnson admitted committing the robbery, and showed Detective Lozano where he and the other men left the Volvo and where they pawned the jewelry. Mary Soliz, appellant's mother and the owner of the house where the Volvo was found, told police her nephew, Valentin Suniga, left the car there and that he was with her son. While police were at the Soliz house, a blue Oldsmobile drove up, and a search of that vehicle revealed credit cards belonging to Rebecca Calles, Albert Martinez, and to two other robbery victims.

Hollyann Moncado, an employee at El Buffalo Pawn Shop, located on Old Pearsall Road, testified that she was working on the afternoon of November 1, 2008 when four men entered and pawned three rings and a necklace. Surveillance video from inside and outside the pawn shop was played for the jury and shows four men entering the shop and pawning jewelry. Valentin Suniga was the first to approach Moncado and showed his driver's license to her. Another male was wearing a diamond cross pendant necklace that he eventually decided to pawn. Moncado later identified that male in a photo lineup as Soliz. Moncado also identified Johnson, Suniga, and Perez in photo lineups. Moncado stated the men appeared to be in a hurry and her boss

began to get suspicious that the jewelry might have been obtained through foul play. After a while, three of the men left the shop, leaving Suniga to complete the transaction. She saw Suniga drive away alone in a green four-door car. Some of Albert Martinez's jewelry, including the cross necklace, was later recovered from the pawn shop.

Kris Martinez, a crime scene investigator, testified that she processed a 1995 four-door Volvo in connection with the robbery. She recovered a purse, three wallets, a knife, and a checkbook belonging to Katia Callado, a Metro News employee who was working the day of the robbery, from the car. Martinez found fingerprints on the rearview mirror of the car. Detective Robert Ramos testified that the prints were a match for Suniga and Soliz.

The jury found Soliz guilty of all five counts of aggravated robbery with a deadly weapon. During the punishment phase, Soliz took the stand to explain his prior criminal convictions and to also explain that he was not guilty of the current charges. Soliz stated that on the evening of October 31, 2008, he stayed out late and slept at a friend's home. The next morning, his cousin, Valentin Suniga, woke him asking for money, and he told Suniga to go away. Around 1:00 p.m., his mother picked him up so that he could do yard work at her house. On his way there, he and his mother stopped at a restaurant on Old Pearsall Road. While at the restaurant, he called Suniga, who said he was on his way to the area and asked Soliz to pawn some stuff for him. Soliz agreed to do so. Suniga came to the restaurant and gave Soliz a necklace, which Soliz offered to buy for $100 because he liked it. Suniga said it would be up to his companions, Darrell Johnson and Jonathan Perez, to decide whether to sell it to him. They agreed to sell the necklace to Soliz for $100 and a watch for $50. When the four men arrived at the pawn shop, however, Soliz decided he did not want to pawn anything.

The jury assessed sentences of 50 years on each count, and the trial court sentenced Soliz accordingly, with an affirmative deadly weapon finding, and with all sentences to run concurrently. Soliz timely appealed.

*Corroboration of Accomplice Witness Testimony*

The testimony of an accomplice witness is to be carefully scrutinized not only because of any interest he might have, but because his testimony is evidence from a corrupt source. *See Paulus v. State*, 633 S.W.2d 827, 843 (Tex. Crim. App. 1981). Therefore, Article 38.14 of the Code of Criminal Procedure provides a conviction cannot be upheld on the basis of accomplice testimony unless it is corroborated by "other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). The corroborating evidence is not sufficient if it merely proves the commission of the offense. *Id.*; *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). In reviewing the sufficiency of the corroborating evidence, we eliminate the accomplice testimony from consideration and focus on the remaining portions of the record to determine whether there is any evidence that tends to connect the defendant with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); *Cathey*, 992 S.W.2d at 462-63 (appellate courts should not apply legal and factual sufficiency standard to statutorily based review of accomplice-witness testimony). The corroborating evidence may be direct or circumstantial, and need not be sufficient by itself to establish the defendant's guilt; it is sufficient if the combined weight of the non-accomplice evidence tends to connect the defendant to the offense. *Solomon*, 49 S.W.3d at 361; *Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991). A defendant's mere presence at the scene of the crime is by itself insufficient corroboration; however, presence combined with other suspicious circumstances may be enough to tend to connect the defendant. *Cox v. State*, 830

S.W.2d 609, 611 (Tex. Crim. App. 1992); *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). Similarly, evidence the defendant was in the presence of the accomplice at or near the time or place of the offense is proper corroborating evidence. *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997); *Barrera v. State*, 321 S.W.3d 137, 148 (Tex. App.—San Antonio 2010, pet. ref'd).

Looking to the non-accomplice evidence in the record, Hollyann Moncado testified that Soliz, along with Johnson, Perez, and Suniga, came to the El Buffalo Pawn Shop on the afternoon of November 1, 2008 and pawned a diamond cross pendant necklace in exchange for $450. She stated the men appeared impatient. Surveillance video from the pawn shop showing all four men was played for the jury. Possession by the accused of fruits of the crime tends to connect him with the commission of the crime and may be sufficient corroboration of accomplice witness testimony. *Lyman v. State*, 540 S.W.2d 711, 714 (Tex. Crim. App. 1976) (citing *Edwards v. State*, 427 S.W.2d 629, 633 (Tex. Crim. App. 1968)). Further evidence shows that Soliz's fingerprints were on the rearview mirror of the Volvo that was parked at his mother's house after the robbery, the same car that the victims saw leaving the robbery. A search of the Volvo revealed personal items belonging to victims of the robbery.

We conclude the non-accomplice evidence detailed above sufficiently corroborates the accomplice witness's testimony. The getaway vehicle found at Soliz's mother's house—with his fingerprints on it and items from the victims found inside—as well as the pawn shop video and Moncado's testimony, link Soliz to the aggravated robbery. Thus, the combined weight of the non-accomplice evidence sufficiently "tends to connect" Soliz to the robbery. *Gosch*, 829 S.W.2d at 777; *Barrera*, 321 S.W.3d at 149. Accordingly, we overrule Soliz's first issue on appeal.

*Ineffective Assistance of Counsel*

Next, Soliz alleges he received ineffective assistance of counsel when his trial attorney failed to yield to his request to testify to his innocence at the guilt/innocence phase of the trial. Soliz did testify on his own behalf at the penalty phase. He explained his prior criminal history, denied that he was guilty of the current robbery charges, and stated that he did not meet up with Valentin Suniga and the other two robbers until just prior to their trip to the pawn shop. At the end of his testimony, Soliz explained that he did not testify at the guilt/innocence phase because his attorney advised him not to do so: "You advised me not to because of the State bringing up my charges, my past, and I didn't think - - you said you didn't want the jury to see that I had a record. . . . But I asked you to, because of the good things that I've done . . . That's why I came to a jury trial." In closing argument, defense counsel started by saying, "I may have made a mistake. I told him not to testify. I didn't think he should. It's been my experience that once a jury hears that someone has had that much criminal history, they tend to quit listening to other things."

Under the well-established standard articulated in *Strickland v. Washington*, a defendant seeking to challenge counsel's representation must show that his counsel's performance (1) was deficient and (2) prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009); *see also Johnson v. State*, 169 S.W.3d 223, 235-36 (Tex. Crim. App. 2005) (providing that an allegation that defendant's right to testify was denied by defense counsel is analyzed under both prongs of *Strickland*). To establish deficiency "the appellant must prove by a preponderance of the evidence that his counsel's representation objectively fell below the standard of professional norms." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). To establish prejudice, the appellant "must

show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" is a "probability sufficient to undermine confidence in the outcome," meaning "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687, 694.

Defense counsel shoulders the primary responsibility to inform the defendant of his right to testify, including the fact that the ultimate decision belongs to the defendant. *Johnson*, 169 S.W.3d at 235. While the defendant must make the ultimate decision on whether to testify, counsel may advise him on the advantages and disadvantages of testifying. *See Sapata v. State*, 574 S.W.2d 770, 771 (Tex. Crim. App. 1978). Soliz does not claim that counsel misled him into believing that he was not permitted to testify, only that counsel advised him not to. The record does not contain evidence suggesting that Soliz was unaware that he had the authority to decide for himself whether to testify or that counsel failed to so inform him; he was not denied the right to testify. Accordingly, we conclude Soliz failed to show that counsel's performance was deficient. Because Soliz has failed to establish the first *Strickland* prong, he cannot prevail on his claim of ineffective assistance of counsel. We therefore overrule his second issue on appeal, and affirm the judgment of the trial court.

Phylis J. Speedlin, Justice

DO NOT PUBLISH