VARONA THOMAS V. STATE.

No. 29,639. April 23, 1958.
State's Motion for Rehearing Overruled
(Without Written Opinion) June 4, 1958.

*W. B. Chauncey,* Hubbard, and *Bernard Martin,* Wichita Falls, for appellant.

*Owen F. Watkins,* County Attorney, *L. E. Eubanks,* Assistant County Attorney, *Carl Cannon,* Special Prosecutor, all of Groesbeck, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is murder; the punishment, 25 years.

The sufficiency of the evidence to corroborate the testimony of the accomplice witness is seriously challenged.

Article 718, V.A.C.C.P., provides:

"A conviction cannot be had upon the testimony of an accomplice unless coroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

In construing such statute, this court has consistently applied the following rule: "The test as to the sufficiency of the corroboration long recognized as correct by our courts is to eliminate from consideration the evidence of the accomplice and examine the testimony of other witnesses with the view of ascertaining if from them comes incriminating evidence which tends to connect accused with the commission of the offense. If so, the corroboration is sufficient; otherwise, not." Barnes v. State, 158 Texas Cr. Rep. 93, 253 S.W. 2d 440, and Turner v. State,

108 Texas Cr. Rep. 486, 1 S.W. 2d 642. We shall apply these rules to the facts before us here.

Cobb, the confessed murderer, who had shortly before the homicide been released from the penitentiary on parole after serving 12½ years of a 99-year sentence for robbery with firearms, testified that he shot and killed the deceased while the deceased was seated in his automobile on a country road and at a time when the appellant was seated in a pickup truck some fifty yards away. He stated that he killed the deceased because the appellant told him "we are going to have the money" which she understood the deceased customarily carried about his person.

According to Cobb, no one else was present at the scene of the homicide, and, in order to determine if there is incriminating testimony from other witnesses which tends to connect the accused with the killing, we must outline his testimony more fully. After his release from prison, Cobb was employed and lived alone on a ranch in Leon County and made frequent trips to Mexia in Limestone County, where he met the appellant, who appears not to have been married at the time, at a beer establishment. They became intimate, and on occasions she would visit for a day or two at a time at the ranch. On the day of the homicide, he and the appellant were seated in the Past Time Club in Mexia drinking beer when the deceased came in and seated himself at another table. Appellant told Cobb that the deceased was a school teacher and had been known to carry as much as $200.00 on his person at a time. Shortly after this, the deceased left the tavern and, when Cobb went outside the deceased, who was seated in his automobile, called to him and asked him for a match. The deceased offered to buy Cobb a beer; Cobb was agreeable, and the beer was brought out to the automobile and consumed by the two men. Further drinking was mentioned, and, as closing time had arrived, the parties, having been joined by the appellant, left in their respective conveyances; the appellant accompanied Cobb in a pickup truck, and the deceased followed in his automobile. Some distance outside the city limits, Cobb brought his pickup to a halt, and the deceased stopped his automobile some fifty yards behind. During their journey to the rendezvous, according to Cobb, the appellant suggested that they rob the deceased, and he demurred. Upon coming to a halt, Cobb walked back to the deceased's automobile, and they sat there and consumed a quantity of beer and whiskey, the appellant remaining in the truck ahead. As best we can understand Cobb's testimony, he later returned to his truck and announced to the appellant that he was going home and suggested

that she return to Mexia with the deceased; that the appellant refused and said, "We are going to have to have the money," and, after an argument, Cobb agreed, got his rifle out of the truck, and went back and shot the deceased. He does not explain how or when appellant got any money from the deceased, if she did, but says that the following morning she gave him two dollars. After the shooting, according to Cobb, the appellant drove deceased's automobile, and he followed in the truck some distance until they found a steep embankment where he rolled the deceased's body out of view, and they proceeded to the ranch. The next day Cobb painted the deceased's automobile red, exchanged the license plates with those on the truck, and began to use the deceased's automobile as his own. He returned the appellant to Mexia the next day and did not see her except at a distance until he was arrested approximately a week later, at which time he confessed to the murder, implicated the appellant, took the officers to the ravine where deceased's body was recovered and to the ranch where the officers found all of the deceased's personal effects. This, we think, is a fair synopsis of Cobb's testimony.

Now we come to the corroboration.

Mattie Chambers and her husband, who operated the Past Time Club, testified that the appellant and Cobb were drinking beer on the night in question when the deceased came in the tavern and that after the deceased left Cobb also left, and still later the appellant left, and they saw the appellant get in Cobb's truck and drive away.

Irwin Foreman testified that he was seated outside an adjacent cafe on the night in question and saw the deceased seated in his automobile, that what appeared to be two people in a truck backed out and drove away, and the deceased followed in his automobile, and that he watched them until they drove out of sight past deceased's mother's home.

The remainder of the testimony is fragmentary. It was shown that the appellant and Cobb were seen together prior and subsequent to the homicide, and one witness said he saw them in a red, or wine colored automobile after the killing. One witness testified that he milked the appellant's cow on the morning after the homicide and did not see her at home at that time. There was other testimony showing that the deceased had cashed a check on the day before he was killed, and the manner in which Cobb was apprehended was shown; but there was nothing in this testimony incriminating to the appellant.

After mature consideration, we have concluded that the evidence offered in corroboration of the accomplice was not sufficient to meet the rule set out. At best, these circumstances merely raise a suspicion that the appellant participated in the homicide, but do not meet the requirements of the law.

The judgment is reversed and the cause remanded.

## C. N. TICER V. STATE.

No. 29,591. March 26, 1958.
Appellant's Second Motion for Rehearing Overruled
May 14, 1958.
Appellant's Second Motion for Rehearing Overruled
(Without Written Opinion) June 4, 1958.

*Allison, Steele & Allison,* Levelland, for appellant.

*George Gilkerson,* District Attorney, Lubbock *John B. Stapleton,* District Attorney, Floydada, and *Leon Douglas,* State's Attorney, Austin, for the state.