BEVERLY GENE BRADFORD V. STATE

No. 32,554. December 7, 1960

Motion for Rehearing Overruled February 8, 1961

*Brown and Shuman*, Lubbock, for appellant.

*George E. Gilkerson*, District Attorney, *Ray Sanderson*, Assistant District Attorney, Lubbock, and *Leon Douglas*, State's Attorney, Austin, for the state.

WOODLEY, Judge

The conviction is for felony theft; the punishment, five years.

The indictment alleged that appellant "while acting together with Ivan Estes Hill, J. W. Jennings and Jimmie Stewart" fraudulently took from the possession of T. C. McLain $75.00 in United States currency of the value of over $50.00

T. C. McLain was the president of McLain Oil Company, a corporation, which operated a number of service stations.

One of these stations was located at 301 Avenue H in Lubbock. James Drury was the manager of this station, and Jimmie Stewart, named in the indictment, was an employee and night attendant.

Mr. McLain testified that he had custody of the service station and of the merchandise and money taken in, and that the McLain Oil Company, a corporation, was the owner. He also testified that he was responsible for seeing that the money from the service station got to the bank.

Stewart, who testified as an accomplice witness for the state, was an ex-convict. Mr. McLain testified that Stewart had authority to sell merchandise, take in money, cash checks, "he's just in charge at night, is what it amounts to." He further testified that he did not give consent or authority to Stewart to take any money and appropriate it to his own use, nor did he consent that the

appellant or Hill or Jennings take any money from the service station.

The evidence shows that it was the custom to take inventory of the merchandise and money of the service station twice a week, and to leave $50 in currency and change in the cash register when McLain and his manager, Mr. Drury, went home about 6 P.M. each day.

During the early morning hours on March 29, 1958, Mr. McLain went to the service station in response to a call from Mr. Drury. He testified "Well, I found the station — the money — someone had robbed the station and the boy that was working was very scared, sick — I believe he was the scardest man I ever seen, white as cotton — he was standing beside of the car when my wife and I got down there, vomiting —".

A check of the cash register revealed that all of the money except a few pennies was missing. An inventory made about 6 A.M. showed a shortage in cash or merchandise or both of $135.63.

Mr. McLain testified that the station loss was reported to him as an armed robbery.

The accomplice witness Stewart gave the following as the true version of the loss of the money.

He checked under the hood of a '48 or '49 model green Cadillac about 9 P.M. and had a conversation with J. W. Jenning, the exact contents of which were not shown, appellant objecting that it was hearsay as to him. Stewart testified, however; "I didn't want to talk about anything like that, that's the reason I told them to come back some other time and talk about the deal".

About 2 A.M. appellant came into the station and told Stewart he was supposed to come in and get the money. Stewart said "What money?" "And he said 'What you-all was talking about while ago', and I said 'I'll have to call the law'. and he said 'Let me worry about the law, you get in the back room and keep your mouth shut and stay in there 15 minutes', I believe it it was".

Stewart testified that he saw a "bulge" in appellant's pocket but could not swear it was a gun; that he opened the cash register for appellant and went into the back room as he was told;

that he gave appellant the money upon his demand, and would have done so if he had not had his hand in his pocket: "The boss said anyone ever come in and ask for money out of the cash register, to let them have it without saying anything whatever to them," and that he "more or less felt like he was robbed that night".

Police Officer Bill Rutherford testified that while patrolling with Officer Stafford they were traveling north on Avenue H, in the 200 block (the service station was located at 301 Avenue H) and saw a 1948 Cadillac come from the east on Second Place and turn north on Avenue H at a high rate of speed, disregarding the stop sign. The officers turned on their red light and stop light, and stopped the Cadillac within a block.

The officers identified appellant as the passenger seated on the right of the front seat they saw bent over and, after the Cadillac stopped, raise back up.

Officer Rutherford testified that he walked up to the right side of the Cadillac and opened the door, and as he opened it loose coins fell from the floor board on to the pavement. At this time Officer Rutherford saw the butt end of a pistol under the front seat and under appellant. The pistol was empty.

Ivan Estes Hill was driving the Cadillac and J. W. Jennings was seated between the driver and appellant.

Appellant was searched and a "large amount of loose coins from one of his front pants pockets," and "a roll of bills from his other pants pocket" were found, the money totaling $126.15. A loaded pistol was found under the driver's seat of the Cadillac.

Officer Rutherford fixed the time of stopping the Cadillac at 2 A.M., and testified that no call had been received prior thereto concerning anything that occurred at 301 Avenue H.

Officer Stafford called by radio to learn if there had been a burglary or robbery and appellant, Jennings, and Hill were taken to the service station at 301 Avenue H.

Officer Rutherford testified that Stewart "was very nervous and upset, unable to recognize or identify them."

Officer Stafford gave testimony similar to that of Officer Rutherford.

Sgt. Eller testified that he responded to a call from Officer Stafford just before 2 A.M. and went to where the Cadillac was stopped. He picked up some of the change and took Hill to the station at 301 Ave. H, the others following in another car. He turned the money over to Lt. Keaton who was at the station with Stewart. Sgt. Eller testified that Stewart did not identify either of the three men as being involved in anything at the station.

Lt. Keaton testified that he and Sgt. Arnold made the call to the service station and Stewart told them he had been robbed. Another patrol unit came up with three men who were brought in for Stewart to identify "and he immediately went into hysterics

— He got very sick at his stomach and was shaky all over and couldn't stand up, couldn't talk to you very well. In fact, we had to give up talking to him shortly thereafter, he couldn't even answer our questions he got so nervous."

Mr. Drury identified Jennings, Hill and the appellant as the men who were "brought back" to the station. He also testified that at 5 P.M. he made a deposit to the main office leaving $50 in currency plus the silver in the cash register; that he left the station at 6 PM. and in answer to a call went back about 2:30 A.M. and found a few pennies in the cash register.

At the trial Stewart identified Jennings as the man he had a conversation with about 9 P.M. and identified the appellant as the man who came in about 2 A.M. and said he came for the money. He identified both Jennings and the appellant as two of the three men the officers brought to the station shortly after the money was taken.

Stewart admitted that he reported the loss as a robbery; that he told the officers he could identify the men; that he appeared before the grand jury and "told them I couldn't identify them, that I thought it was some Mexicans." Stewart also admitted that he signed an affidavit dated May 14, 1958, which was introduced by the defense, and which he testified was a lie, in which statement he said in part: "Since the complaint was filed, I have seen Gene Bradford (appellant) about three times and studied his appearance, and wish to saythat I am positive he is not the man that robbed me on the night of March 29, 1958."

Stewart also admitted in cross-examination that he lied in the grand jury room.

Stewart's explanation for his prior statements and his failure to identify appellant and Jennings, when they were brought back to the station soon after the money was taken, included: "Well, Sir, I just had gotten out of prison myself, and I was on parole and didn't want to get involved in anything and I just—I guess more or less scared * * * ."

Appellant came to his house a couple of times. "He told me I better keep my mouth shut and not identify him in court"; appellant went with him to a lawyer's office and "going over there when he said he would give me $50.00 out of what he got back that the police taken from him, that someone might want to give me a lie detector test and not to take it and he said somebody might rough up my head."

Stewart further testified that he took a lie detector test regarding the case and then a written statement at the Department of Public Safety. This statement was offered in evidence but objection was sustained. He was asked on cross-examination and answered:

"Q. And on that lie detector test, they asked you if you had anything to do with that robbery, didn't they? A. I believe so.

"Q. And you denied it then, didn't you? A. All that I could deny was that I didn't plan anything to being robbed. When I told them to come back some other time and talk it over that might have been the reason that they had come on back."

Appellant filed motion for severance averring that the evidence of Jimmie Stewart, J. W. Jennings and Ivan Estes Hill, who were separately indicted for the same offense, was material for his defense. The charges against all three were dismissed and they were available to testify. Stewart testified for the state, and Jennings was called by the state but claimed his privilege against self-incrimination. Hill was not called.

Appellant did not testify. He called two witnesses whose testimony suggested that appellant may have obtained the money found in his possession and on the floor of the Cadillac, and the two pistols, in a poker game.

The first ground urged for reversal is the contention that the evidence is insufficient to sustain the allegation of the indictment that the money taken was the property of T. C. McLain. This contention is predicated upon the fact that the corporation, Mc-

Lain Oil Company, was the actual owner of the service station and the money.

Mr. McLain was President of the corporation; had custody of the station and the money taken from it, and was responsible for seeing that the money got to the bank.

We find the evidence sufficient to show that McLain was the special owner of the money and to sustain the allegation of the indictment.

Easley v. State, 167 Tex Cr. R. 156, 319 S.W. 2d 325, does not sustain appellant's contention to the contrary. In that case the true owner was, as here, the corporation but the indictment alleged that the money was taken from the possession of Burgin Edens who was holding it for H. E. Butt. Here the indictment alleged ownership and possession in the natural person who testified that he had custody of and was the owner of the money that was lost.

Osborne v. State, 93 Tex Cr. R. 54, 245 S.W. 928, sustains our holding that the ownership of the property was properly alleged and proved.

The second proposition is that there is not sufficient evidence to corroborate the accomplice witness Stewart relative to the amount of mony allegedly taken and relative to the appellant acting together with Hill, Jennings and Stewart.

The recent case of Chavira v. State, 167 Tex. Cr. R. 197, 319 S.W. 2d 115, and cases there cited are relied upon by appellant and by the state. The test in determining the sufficiency of the corrobration is thus correctly stated in Chavira v. State:

"The test as to the sufficiency of the corroboration long recognized as correct by our courts is to eliminate from consideration the evidence of the accomplice and examine the testimony of other witnesses with the view of ascertaining if from them comes incriminating evidence which tends to connect accused with the commission of the offense. If so, the corroboration is sufficient; otherwise, not."

We find nothing in this rule which would require the corroborating evidence to show or tend to show that appellant, Jennings and Hill, who were found in possession of money under circum-

stances corroborating Stewart's testimony, acted together with Stewart in the theft of such money.

"An indictment charging two or more defendents with the commission of an offense need not contain an allegation that they 'acted together,' and such allegation, if made, not being descriptive, may be rejected as surplusage." Branch's Ann. P.C. 2d, Sec. 704, and cases there cited.

The case of Brady v. State, 122 Tex. Cr. R. 539, 56 S.W. 2d 879, does not sustain appellant's contention. There the offense charged was conspiracy. The opinion pointed out that the question was not the theft, but a conspiracy to steal. Here the charge was theft and not a conspiracy.

Upon the evidence above stated, we overrule appellant's next contention, namely that the proof shows that the offense, if any, was armed robbery or receiving property embezzled by Stewart from McLain Oil Company. We direct attention to the fact that it was appellant and not the employee Stewart who took the money from the cash register, and no assault was shown.

Appellant's forth complaint is that he was refused the right to lay a predicate for impeaching the accomplice witness Stewart by asking him, on his cross-examination, if he had denied under oath, before the grand jury, knowing who robbed him. Appellant says that had Stewart denied he made such a statement, he would then have presented the testimony of grand jurors for the purpose of showing that he did make such a statement under oath before them.

The record indicates that there was some confusion of the question of the right of an accused to demand the production of the grand jury testimony of a witness, and the right to impeach a witness by showing that he testified before the grand jury in a material matter at variance with his testimony at the trial.

Cases cited by appellant sustain his contention that he had the right to lay a predicate and to impeach the witness Stewart by proof that he testified before the grand jury that he denied knowing who robbed him. Claxton v. State, 94 Tex. Cr. R. 393, 251 S.W. 1106; McMurrey v. State, 141 Tex. Cr. R. 369, 148 S.W. 2d 1096.

No complaint is brought to this court regarding appellant's demand for the production of Stewart's testimony before the

grand jury and we need say only that this is an entirely different question than that of the right to impeach a witness by his contrary statement before the grand jury.

We are unable to see how appellant was injured or prejudiced by the ruling complained of. Stewart had already admitted before the trial jury that he lied under oath before the grand jury, and "told them I couldn't identify them, that I thought it was some Mexicans." Stewart was already impeached by his grand jury statement, hence there was no necessity for laying a predicate or calling members of the grand jury.

Appellant's attack upon Paragraph 4 of the court's charge cannot be sustained. The court's instruction to the effect that if the corporation was the actual owner of the money and McLain had actual control, care and management of it, then McLain was in law the owner, appears to have been substantially correct. We overrule the contention that such instruction was contrary to the holding in Easley v. State, 167 Tex. Cr. R. 156, 319 S.W. 2d 325.

The remaining ground for reversal relates to the closing argument of the district attorney which is claimed to be inflammatory and prejudicial attack upon appellant and his counsel.

There are no formal bills of exception. There is included in the statement of facts what purports to be the closing argument of the district attorney with a number of objections to various remarks. None of the argument of counsel for appellant appears in the record.

There is no certification or approval mentioning the argument which was included or the arguments which were not included.

The 241 pages, certified by the court reporter to "contain a true and correct Q and A Statement of Facts of the evidence and proceedings adduced on the hearing of the above styled and numbered cause" is approved by the district attorney and by counsel for appellant, and bears the following approval of the trial judge: "Approved and ordered filed as part of the record in the above styled and numbered cause."

Assuming, without deciding, that the complaint to argument is before us by informal bill of exception under the provisions of Art. 759a, Sec. 2c, V.A.C.C.P., we conclude that though we do not

approve the argument, the complained of remarks were not of such nature as to prejudice appellant's case before the jury.

The question as to whether the remarks of counsel which do not violate a mandatory statute, or inject into the case some new and harmful fact, call for reversal of the conviction is to be resolved in view of the probable effect thereof on the minds of the jurors, and the facts of the particular case must be looked into. Hess v. State, 168 Tex. Cr. R. 425, 328 S.W. 2d 308.

The judgment is affirmed.