Elias AYALA, Appellant,

v.

The STATE of Texas, Appellee.

No. 48620.

Court of Criminal Appeals of Texas.

July 10, 1974.

C. Logan Dietz, Houston, for appellant.

Carol S. Vance, Dist. Atty., and James C. Brough, Asst. Dist. Atty., Houston, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Justice.

This is an appeal from a conviction for murder. The jury assessed punishment at seventy-five years.

Initially, the appellant challenges the sufficiency of the evidence. This is a case wherein the State relies in part on the testimony of an accomplice witness.

Viewing the evidence in a light most favorable to the State as we must do, the evidence unfolds a sequence of events which eventually terminates in the finding of the nude body of Gloria Sylvia Garcia on the banks of Swan Lagoon near Clear Lake.

Roy Rosales Cavazos, currently serving a 50-year sentence for this offense, testified that on Sunday May 21, 1972, he and his cousin, the appellant, spent most of the day playing baseball. Later in the day they went to Clayton Homes area. He then stated that he and Sylvia were walking down Runnels Street toward a store when the appellant drove up in his car. The two of them got into the car with the appellant and drove to Clear Lake and went to the Swan Lagoon area. At this point, the witness began to be antagonistic toward the prosecutor and would not relate the sequence of events as they occurred at Swan Lagoon. He did testify that he and the appellant left without Sylvia and that she was dead when they departed the area. The witness acknowledged that he had given a statement to the Harris County Sheriff's office, but he refused to relate the facts of what happened. Cavazos stated that he remembered everything that occurred but that he was not going to tell all that occurred at Swan Lake because ". . . I want to forget it, man. I mean, I have already got my time, you know. I got fifty years to do, man." He further testified that he had on prior occasions had sexual relations with Sylvia and that he had had sexual intercourse with her while the three of them were at Swan Lagoon. Cavazos also stated that he was wearing a black leather belt at the time and that he had left it at the scene. Later in his testimony he answered "yes" when asked if in his presence the appellant had committed any act of violence against Sylvia or instructed him, Cavazos, to do so. But he refused to describe the acts. Cavazos responded, "Look, I mean, you got it there on the paper man. I mean you got it right there. Why don't you let him read it?" The prosecutor stated that it was necessary for the jury to hear it from him to which he replied, "Well, I am telling you everything is there that's true." He again answered affirmatively when asked if he saw the appellant do anything to Sylvia. His statement was never read into nor admitted into evidence.

Mrs. Antonio Garcia testified that she last saw her sixteen-year-old daughter, Sylvia, on Sunday evening, May 21, 1972, at approximately 8:00 p. m. At that time Sylvia and a girlfriend, Virginia Marcha, left the Garcia home at 143 Clayton Homes to go outside and visit with Roy Cavazos, according to the statement made by Virginia to Mrs. Garcia. Mrs. Garcia stated that she did not see Roy outside as she did not look out to see if in fact he was there.

The deceased's brother, Joe Garcia, testified that at approximately 8:30–8:45 p. m. on the evening in question he passed his mother's home enroute to another sister's home at 158 Clayton Homes. As he went by the house he observed his sister, Sylvia, and two other individuals, one of whom he recognized as Roy Cavazos. He also knew Roy to be his sister's boyfriend. Joe was not able to identify the second individual because that person was sitting on the ground and was partially obstructed from view.

The State's next witness, fifteen-year-old Basilio Ayala Rivera, III, known as "Bobby," testified that he was appellant's nephew and that he was also a cousin of Roy's. Bobby further stated that he, the appellant, Roy, and some others began playing base-

ball around 11:30 a. m. and later on drank some beer until about 5:00 p. m. when they went to a friend's house and drank more beer. After leaving there, he, the appellant and Roy went with his grandfather to buy some more beer. At approximately 6:30 p. m. he called Sylvia for Roy but she was not at home. When he returned, Roy and Virginia were with the appellant who was putting water into the radiator of his brown Oldsmobile. Later in the evening, he saw Roy and Sylvia walking toward Runnels Street and borrowed 50¢ from Sylvia in order to buy a package of cigarettes. She gave him a ten-dollar bill and told him to bring her the change. He last saw them as they were walking toward the appellant's car. Bobby also testified that he did not see the appellant around the neighborhood after Sylvia's body had been discovered.

Virginia Marcha testified that she went inside the Garcia home to get Sylvia at Roy's request. She stated that she left around 9:00 p. m. at which time the appellant, Roy and Sylvia were talking while standing next to the appellant's car.

Officer William A. Turner, III, of the Harris County Sheriff's Department Juvenile Division, testified that on May 25, 1972, around 10:30 a. m. he answered a call at the Balboa Apartments in the 2002 block of San Sebastian Court in the Nassau Bay area. The manager of the apartments had discovered a body a short distance away on the bank of Swan Lagoon. Upon investigation he found a badly decomposed nude body, later identified as that of Sylvia Garcia, amidst scattered clothing including torn panties and a bra. A belt minus its buckle was found beneath the body. Near the body, Officer Turner found a log which had a stain on it which appeared to him to be blood. Floyd E. McDonald, a chemist with the Houston Police Department, testified that the stain was definitely human blood but that he was unable to type it. Officer Turner further testified that when he interviewed Cavazos on May 26, the next day, he, Cavazos, was cooperative but nervous.

Dr. Giles Sheldon Green, assistant medical examiner for Harris County, testified that in his estimation Sylvia had been dead for four, five or six days when her body was found on May 25, 1972. Though her body was in an advanced state of decomposition, he was able to conclude that the cause of death was from a crushed face. She had sustained a four-inch ragged transverse laceration from her left upper eyelid over the bridge of her nose and toward the right eye. In addition to every bone in her face being broken or shattered, she had sustained a laceration of the lip. Her skull was fractured and the autopsy also revealed that she was pregnant.

Officer Richard Delano of the Houston Police Department testified that he arrested Roy Cavazos on May 26, 1972, a Friday afternoon. He then stated that the last thing he did on Friday was to go by the Garcia home to update them on the progress of the investigation. Upon his arrival there at approximately 4:30 p. m. or 4:40 p. m., he observed a young Latin-American man loading clothes into a large brown automobile as if he were packing to leave on a trip. When he left the Garcia home some five to ten minutes later, the man and the vehicle were gone. Officer Delano identified the appellant in court as the young man he had observed loading the car. He also stated that he was unable to locate the appellant from that time on through December of 1972. Officer Turner testified that the appellant had been arrested in Corpus Christi on January 8, 1973, and returned to Houston on January 10, 1973.

The court charged the jury on the law of principals and, in its charge, instructed the jury that the witness Cavazos was an accomplice witness as a matter of law and fully instructed them as to the corroboration necessary to convict under the provisions of Article 38.14, Vernon's Ann.C.C. P., which reads:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to

connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain if there is inculpatory evidence; that is, evidence of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise it is not. Edwards v. State, Tex.Cr.App., 427 S.W.2d 629.

The evidence in the present case shows that the appellant was seen putting clothes in his car as though he were packing for a trip on the afternoon of May 26, 1972, the day after the deceased's body was found, and not seen again until his subsequent arrest in Corpus Christi on January 8, 1973. Unexplained flight has long been deemed indicative of a consciousness of guilt. Cawley v. State, 166 Tex.Cr.R. 37, 310 S.W.2d 340.

Further, the evidence reflects that efforts were made to locate and apprehend the appellant. This evidence is relevant to prove flight. Thames v. State, Tex.Cr.App., 453 S.W.2d 495. It is a circumstance which tends to show his knowledge of the finding of the deceased's body and the arrest of Cavazos.

Next, the corroborating testimony places the appellant with the deceased and the accomplice the last evening she was seen alive. This day coincides with the latest estimate as to the date and the time of her death. Appellant's packing of his car and his subsequent disappearance the day after the body was found and on the afternoon of the day on which the accomplice was arrested may reasonably be considered flight, especially in light of his arrest some seven months later in Corpus Christi.

The corroborative evidence is sufficient if the cumulative weight of such evidence tends to connect the accused with the crime. There is no requirement that the corroborative testimony link the accused directly to the crime or be sufficient in itself to establish guilt. Runkle v. State, Tex.Cr.App., 484 S.W.2d 912.

The mere presence of the accused in the company of the accomplice shortly before or after the time of the offense is not, in itself, sufficient corroboration of the testimony of an accomplice. Thomas v. State, 166 Tex.Cr.R. 331, 313 S.W.2d 311; Robert v. State, 161 Tex.Cr.R. 188, 276 S.W.2d 270. However, the presence of the accused with the accomplice, when coupled with other circumstances, may be sufficient to corroborate the testimony of the accomplice. Cherb v. State, Tex.Cr.App., 472 S.W.2d 273. In the instant case, the presence is coupled with flight.

We hold that the evidence amply corroborates the accomplice witness' testimony and is sufficient to sustain the jury's conclusion of appellant's guilt.

Appellant also contends that the State should not have been allowed to impeach its own witness because the proper predicate had not been laid and the witness did not state positive facts injurious to the State's case, but merely refused to testify.

The record does not support this contention. It appears that what the appellant is contending is that his case was prejudiced by the State pleading surprise twice during Cavazos' testimony and asking that the jury be removed for a hearing. Such a contention is without merit. The claim of surprise in front of the jury is not reversible error. The State did not impeach the witness. The prior statement was never introduced into evidence nor was it read to the jury.

Finally, the appellant alleges that his motion for new trial was improperly

**288**

overruled. Specifically, he contends that his affidavit in support of his motion for new trial set out new impeachment evidence as to the credibility of Cavazos. Affidavits containing mere impeachment testimony are not such newly discovered evidence as will require the granting of a new trial. Dubois v. State, 164 Tex.Cr.R. 557, 301 S.W.2d 97.

No reversible error being shown, the judgment is affirmed.