Harold D. CARAWAY, Appellant,

v.

The STATE of Texas, Appellee.

No. 54393.

Court of Criminal Appeals of Texas.

May 18, 1977.

Patrick A. Lanius, Huntsville, for appellant.

Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for the offense of murder with malice under our former penal code upon a plea of not guilty. The jury assessed punishment at life imprisonment.

Co-defendant Douglas Arthur Bates testified on rebuttal to the events surrounding

the killing as follows: In November 1970 appellant asked Bates to help him with the murder of Horace Knox for $500.00. Appellant then telephoned a woman named Mildred and Bates spoke to her about the murder. A week prior to the murder appellant and Bates made a trip in the vicinity of Lovelady, but did not go to Mr. Knox's house. At that time appellant had a hand-drawn map.

On December 23, 1970, appellant picked Bates up shortly before 12:00 and they proceeded to Bates' trailer where they found Tommy Bell, Sandra Franklin and Bruce Pershall. The five left Houston in Bates' Cadillac and drove toward Dallas on the interstate highway. They left the highway at Crockett where they stole a white Mustang and a .30–.30 rifle.

From Crockett they drove to Lovelady and to Mr. Knox's house. Bates testified that he drove in the Mustang with appellant while the others drove in the Cadillac. Pershall, Bates and appellant went up to the house. When Mr. Knox came to the door with a .22 single shot in his hand, the three men tackled him. Appellant asked the man if he was Horace Knox and when the man responded affirmatively the appellant began beating him with the .22 rifle.

Bates found a shotgun and Pershall found some shells in Knox's home. Bates admitted that he shot the man once with the shotgun in the waistline. He testified that the three of them wiped any fingerprints and left with the shotgun. Later they picked Bell up on the side of the road. It was Bates' testimony that the murder occurred at approximately 3:30 in the morning.

On cross examination Bates was confronted with prior inconsistent statements in regard to this case. He admitted that he had earlier attempted to blame Tommy Bell for the murder because Bell had previously informed on Bates for the burglary of a doctor's office.

This testimony was corroborated earlier by Tommy Bell, who testified that on the night of the murder he was at Bates' mobile home "fixing up speed" and at approximately 11:00 o'clock he, Bates, appellant, Sandra Franklin and Bruce Pershall drove in Bates' automobile to Crockett. In Crockett appellant stole a .30–.30 rifle from a truck and later Bates and appellant stole a white Mustang. Bell testified that Bates drove the Mustang with appellant and that Pershall and Franklin rode in the Cadillac with him.

They stopped at a farm house and Bates and appellant went to the front door of the house and entered. Approximately 10 or 15 minutes later Bell heard a shot, at which time he got scared, made a U-turn and drove off. He testified that he later had a flat tire and pulled off on the shoulder of the road somewhere past Huntsville. After hitchhiking for 30 minutes or an hour Bates picked him up in the Mustang. Bell testified that at this time it was approximately 3:30 or 3:45. He further testified that he did not see a shotgun or any kind of weapon in the car, nor did any of his companions mention what had happened in the farm house that night. Bell admitted taking "speed" before going on the trip that night and testified that he took drugs, mostly amphetamines.

In addition to the testimony of co-defendant Bates, Bell, the medical examiner and the investigating officer, the appellant presented several alibi witnesses. Appellant's grandmother-in-law, mother-in-law, Winnie Davis, and his wife all testified to appellant's presence at a Christmas party until 11:45 or 12:00 p. m. the evening of December 23, 1970. Appellant's mother-in-law testified that he was living with her at the time and that they all went to bed at approximately 11:15. She further testified that she saw appellant the following morning at 6:15.

Appellant's wife testified that she and appellant went to bed at approximately 12:30, but got up at approximately 1:00 o'clock to call appellant's mother. They went back to bed at about 1:15 and talked to one another until about 1:30. At approx-

imately 3:00 appellant's wife was awakened by her baby and she testified that at the time she noticed that appellant was still in bed.

In his second ground of error appellant assigns error to the trial court's failure to instruct a verdict of acquittal in that there was insufficient evidence to corroborate testimony of the accomplice witness as required by Art. 38.14, V.A.C.C.P.[1] The application of Art. 38.14 requires that the testimony of the accomplice witness be eliminated from consideration while the testimony of the other witnesses is examined for evidence of an incriminating nature tending to connect the accused with the commission of the offense. *Moore v. State*, Tex.Cr.App., 521 S.W.2d 263.

Appellant contends that the only testimony other than that offered by Bates which connected him to the offense was that given by Bell, also an accomplice witness. If that contention is correct, this conviction must be reversed, because the testimony of one accomplice witness cannot be used to corroborate that of another. See *Chapman v. State*, Tex.Cr.App., 470 S.W.2d 656.

Douglas Bates was an accomplice witness as a matter of law. The jury was instructed that Bates was an accomplice witness; however, they were given no instruction concerning Bell's status. A careful examination of appellant's brief and the record before us does not reflect that appellant ever requested that the jury be so charged. Ordinarily when there is doubt whether a witness is an accomplice witness, it is sufficient if that fact issue is submitted to the jury even though the evidence seems to preponderate in favor of the fact that such a witness is an accomplice witness as a matter of law. *Colunga v. State*, Tex.Cr. App., 527 S.W.2d 285. However, since the issue was not submitted to the jury in the

instant case, it is necessary for us to determine if Bell is an accomplice witness as a matter of law.

As we noted in *Singletary v. State*, Tex. Cr.App., 509 S.W.2d 572:

"An accomplice witness has been described as a person, who, either as a principal, accomplice, or accessory, was connected with the crime by unlawful act or omission on his part, transpiring either before, at the time of, or after the commission of the offense, and whether or not he was present and participated in the crime."

Appellant argues that because Bell admitted he was a party to the theft of the automobile and rifle shortly before the murder he should be considered an accomplice witness to the instant offense. Appellant notes that Bell was driving Bates' car when he saw Bates and appellant enter the farm house. He argues that from the two thefts just committed it would have been reasonable for Bell to assume Bates and appellant were about to commit a third crime when they went into the farm house. From these facts appellant concludes that some complicity still existed on Bell's part which necessitates corroboration of his testimony as an accomplice. Although appellant's argument is compelling, we do not agree.

The mere fact that a witness has complicity with an accused in the commission of *other* offenses does not make his testimony that of an accomplice witness for the offense for which the accused is on trial if there is no showing of his complicity in that offense. *Easter v. State*, Tex.Cr.App., 536 S.W.2d 223. The record in the instant case does not reflect any affirmative act on Bell's part to assist in Knox's murder. See *Chappell v. State*, Tex.Cr.App., 519 S.W.2d 453. Appellant made no showing that Bell participated in planning or promoting the offense. See and compare *Cross v. State*,

1. Art. 38.14, V.A.C.C.P., provides:
"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the de-

fendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

Tex.Cr.App., 550 S.W.2d 61 (decided April 20, 1977). Even if Bell had been told of the killing later that evening when he was given a ride by appellant and Bates, a witness is not deemed an accomplice witness merely because he knew of the crime but failed to disclose it or even concealed it. *Easter,* supra. The fact that Bell was present outside the farm house at the time of the shooting is also not controlling; the fact that the witness was present when the crime was committed does not compel the conclusion that he was an accomplice witness. See *Quintanilla v. State,* Tex.Cr.App., 501 S.W.2d 329; *Easter,* supra; *Colunga,* supra.

Having found Bell was not an accomplice witness as a matter of law, his testimony is a proper corroboration of the accomplice witness Bates. Appellant's second ground of error is overruled.

■ Next appellant contends he was denied due process of law under the Fifth and Fourteenth Amendments when gruesome photographs were "unnecessarily introduced merely to prejudice the defendant and inflame the minds of the jury." Appellant recognizes the rule of *Martin v. State,* Tex.Cr.App., 475 S.W.2d 265, and its progeny which permit the admission of photographs of the deceased if a verbal description of the scene would be admissible. However, appellant stresses that in those cases evidence of guilt was overwhelming and argues that in the instant case the evidence is very weak, thus causing the photographs to have a prejudicial effect on the jury.

Sheriff Monk testified the first thing he saw upon entering the house was "Mr. Knox's body lying in the front room face up near a couch and he had been badly beaten and shot." At that point the State introduced a photograph which Monk said accurately represented the scene except that the deceased's pockets had been turned out in order to remove his personal property. Appellant's objection to the photograph as prejudicial was overruled. Monk identified the second complained-of photograph as the

other side of the room in which Knox was found. Appellant objected to its admission as the third photograph of the deceased and of no value except to inflame the jury.

From the record before us it appears that nine photographs were admitted into evidence showing the physical layout of the living room and the exterior of the house, different parts of a firearm found throughout the room, the deceased's glasses and his body as it was left at the scene. Appellant objects to those photographs which show decedent's body. From the description of these photographs given at the trial, they were properly admissible as pertinent to decedent's injuries and a description of the place where the offense was committed. *Vasquez v. State,* Tex.Cr.App., 532 S.W.2d 338. Furthermore, without the photographs before us for review, we cannot conclude that the photographs lacked probative value and served only to prejudice and inflame the jury.

■ Appellant complains in his fourth ground of error that he was denied due process of law in violation of the First and Fourteenth Amendments because the courtroom had the appearance of an armed camp. In his brief appellant asserts that during the trial several individuals present were armed with pistols: the trial judge, the district attorney, the assistant district attorney, the sheriff, the deputy sheriff, the former deputy sheriff and a Texas Ranger. Before the voir dire of the jury panel, the trial judge informed counsel in chambers and with a court reporter present that he had received information that the joint defendants intended to make a break at the courthouse and possibly take the district attorney with them as a hostage. As a result of these threats, the trial judge stated that he requested the presence of a Texas Ranger, the former deputy sheriff, and either the sheriff or deputy sheriff. The trial judge stated for purposes of the record that both the Texas Ranger and the former deputy sheriff were wearing "street clothes" and no weapons would be displayed by them.

The trial judge additionally informed counsel that he intended to keep a loaded gun in the drawer of his bench and that the State's attorneys were also armed. At this point the trial judge stated his intention to search all male spectators entering the courtroom and the purses of all female spectators. He further stated that these searches would be "outside the vision and without the knowledge of the jury at any time."

The record does not reflect that the jury was aware of these security procedures and appellant admits that there was no showing that the jurors were in fact influenced by the security measures outlined before trial. However, appellant urges that the error was so egregious that no showing of actual prejudice is required. We do not agree.

In *Moore v. State*, Tex.Cr.App., 535 S.W.2d 357, we stressed that it is the trial court's responsibility, subject to close appellate scrutiny, to cause the record to reflect why a defendant must appear before a jury in handcuffs, since such actions infringe his constitutional presumption of innocence. The decision in *Moore* stressed that the error involved concerns the effect of such actions on the *jury* and observed:

> "No justification at all was necessary for handcuffing the appellant during trips between the jail and the courthouse, for the record does not reflect that any jurors would have had occasion to see him during such trips."

The case at bar is more closely analogous to the second situation where there is no showing that the jury was even aware such additional precautions were being taken and consequently there is no showing of harm.

Similarly in *Kimble v. State*, Tex.Cr.App., 537 S.W.2d 254, there was no showing of harm or prejudice when a co-defendant was exposed to the jury in jail clothes. In light of the threats conveyed in this case and the fact that, except for the sheriff or his deputy, all the law enforcement officers present were in plain clothes, and because all searching of spectators was done outside the presence of the jury, we find the security measures taken in this case to be justified and reasonable. See *Chappell v. State*, supra.

■ In his first ground of error appellant complains he was denied equal protection and due process of the law in violation of the Fourteenth Amendment because he "could not post bond prior to trial" and received the maximum sentence but was not given credit for his pretrial jail time. It is appellant's position that denial of pretrial jail time credit unfairly extended his *parole eligibility date* and thus should be controlled by the rationale of *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and *Hart v. Henderson*, 449 F.2d 183 (5th Cir. 1971). We agree.

In *Williams*, supra, the defendant was assessed the maximum sentence of imprisonment in addition to a fine. Defendant's indigency prevented him from paying the fine and the Supreme Court held his imprisonment for non-payment was invalid. *Hart*, supra, a habeas corpus writ, similarly held that the inability of an indigent criminal defendant to make bond should not extend his imprisonment beyond the statutory maximum, and the cause was remanded for an evidentiary hearing on indigency.

Art. 42.03, V.A.C.C.P., in effect at the time appellant was sentenced, allowed the trial judge the *discretion* of crediting a defendant with the time he spent in jail prior to trial.[2] In the case at bar appellant was assessed the maximum punishment of life imprisonment. Appellant argues that although a "life" sentence appears open ended and appears to be controlled solely by the length of appellant's life, a prisoner serving such a sentence is eligible for parole consideration when he has accumulated credit for 20 years of his sentence. Art. 42.12, Sec. 15(a), V.A.C.C.P.

This Court has previously considered the collateral legal consequences of a felony

---

**2.** As amended August 27, 1973, Art. 42.03, V.A.C.C.P., now makes it mandatory to give a defendant credit for his pretrial custody. See *Harrelson v. State*, Tex.Cr.App., 511 S.W.2d 957.

conviction upon a life sentence. See *Ex parte Langston*, 510 S.W.2d 603 and 511 S.W.2d 936. The rationale of those opinions gives appellant standing to challenge the pretrial jail time credit on direct appeal.

■ Although there are no Texas cases referring to the exact issue appellant raises by this ground of error, several federal decisions have addressed the general issue involved. Generally there is no federal constitutional right to credit for time served prior to sentence. *Jackson v. State of Alabama*, 530 F.2d 1231 (5th Cir. 1976). However, a criminal defendant who is confined before sentencing because his indigency prevents him from making bond is excepted from the general rule if he is sentenced to the statutory maximum for his particular offense. *Martin v. State of Florida*, 533 F.2d 270 (5th Cir. 1976).

Here appellant received a sentence of life imprisonment which was the maximum sentence for murder with malice. The record before us reflects appellant's indigency.[3] Thus it appears that appellant has satisfied the two criteria necessary to compel the trial court to award him pretrial jail time credit even though at the time appellant was sentenced the trial judge had complete discretion to grant or deny credit.

Accordingly, upon receiving the mandate in this cause, the trial judge is instructed to credit appellant for time served prior to sentence.

The judgment is affirmed.

**3.** Appellant filed a pauper's oath before trial stating he was in custody because of his inability to make bond and was wholly destitute of means to hire counsel. The trial court then appointed counsel for appellant. The record also reflects appellant's sworn pauper's affidavit claiming his inability to pay court costs.