Leo Burbin RICE, Appellant,

v.

The STATE of Texas, Appellee.

No. 56698.

Court of Criminal Appeals of Texas, Panel No. 1.

March 21, 1979.

On Rehearing Oct. 17, 1979.

Oren B. Hamlin, Bay City, court appointed, for appellant.

Ogden Bass, Dist. Atty. and A. B. Crowther, Jr., Asst. Dist. Atty., Angleton, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for aggravated robbery. The trial court, upon the two allegations of prior final convictions being found true, assessed punishment at life imprisonment.

In a single ground of error, appellant contends that the evidence in this cause is insufficient to corroborate the testimony of the accomplice witnesses and fails to tend to connect him with the offense committed and charged. See Article 38.14, V.A.C.C.P.

The jury was instructed that witnesses Rucker, Bishop, and Caldwell were accomplice witnesses as a matter of law. The law relating to the need for corroborative evidence from non-accomplice witnesses was also provided.

These three witnesses related the events surrounding the planning, preparation, execution, and conclusion of the offense. They all identified appellant as an active participant in the planning and execution of the offense.

The non-accomplice witness testimony to be considered reflects that shortly after 1:35 p. m. on March 24, 1976, the complainant was having a cup of tea with her neighbor when a van drove into her driveway and parked. A man exited and knocked on the complainant's front door. He entered with a drawn pistol and ordered the complainant to sit down. This individual did not wear a mask and was later identified as the accomplice witness Rucker. Another man entered wearing a blue ski mask, gloves, and blue jeans with a gun in his possession. A third man entered through the utility room on the side of the house wearing a yellow ski mask, a jacket with the word "Champion" inscribed thereon, gloves, and blue jeans. This third individual tied the complainant and her neighbor at the wrists and ankles with adhesive tape. The robbers used a walkie-talkie and were searching for a safe within the home. In the course of the robbery, these individuals took the complainant's rings from her hands, papers belonging to her husband, money from a safe in the master bedroom, a pistol, a shotgun, and jewelry. After freeing themselves and discovering their phones were put out of commission, they called the Sheriff's Office from a neighbor's home. The complainant testified that she could not identify the appellant as one of the three men involved in the robbery. She did identify photographs of the white van used in the course of the robbery. The complainant's neighbor who was also within the home during the robbery merely reiterated the testimony of the complainant.

Jack Kemp, a former investigator with the Brazoria County Sheriff's Office who investigated this robbery, testified that he went to the scene of the robbery and then to the location where the white van was found after it had struck a tree after the robbery report was received around 2:30 p. m. Accomplice witness Bishop was arrested at the scene of the van and a .22 caliber Lawman semiautomatic pistol was found at the scene. Kemp recognized the vehicle as one on which a suspicious vehicle report was filed the day previous by the owners of the Sportsman's Village trailer park and restaurant. After discussing the van and recent goings-on in the area with the Carters, a search warrant was obtained and executed on March 25, 1976. The property of the complainant was found within the trailer identified as having been rented to Ronnie Kutzer. Also, gloves, wigs, caps, makeup, and a pistol were discovered in the trailer. Some of the complainant's papers were found in a brown paper sack. Kemp was also advised that there were two other cars in the vicinity of the trailer and the van at the Sportsman's Village, one being described as a vehicle with a dark top and silver bottom. Efforts to obtain fingerprints from the trailer and its contents were unsuccessful. The witness was further advised that two of the individuals seen in the vicinity of the trailer the night before and the day of the robbery made two collect calls from the Sportsman's Village cafe which were traced to a Camsco Furniture business and an unidentified lady in Houston.

Paul Weishman, an identification officer with the Brazoria County Sheriff's Office and who was involved in the investigation of the instant robbery, testified that he photographed the scene of the robbery, the van, and trailer. He obtained a partial print from the rearview mirror of the van, but it was insufficient for comparison purposes. He testified that the Sportsman's Village was approximately 15 miles from the complainant's residence. The van was discovered between five and a half and six miles from the Sportsman's Village.

Sammy Rousso, director of the Southern Pet Laboratories, testified that one of the vans provided to one of his employees was reported stolen on March 22, 1976, and identified photographs of the van as one of the types provided his employees. He also identified the coveralls in evidence as similar to those issued to Southern Pet Laboratories employees. He further testified that the ignition switch on the van had been changed and that there appeared to be some holes drilled in the left side of the van.

Jackie Scopel, the Police Chief of Manvel at the time of this offense, testified that he heard the broadcast of the description of the van and driver used in this robbery and immediately observed a vehicle and driver matching that description. He gave chase, whereupon the driver pulled up in a private driveway, jumped out, and ran. This individual was later arrested with the assistance of Texas Department of Corrections dogs and personnel. This individual was accomplice witness Bishop.

Robert Gladney, Brazoria County Sheriff, testified that after the trial of accomplice witness Rucker he spoke to accomplice witness ·Bishop and was provided a vehicle description and license number. He traced this vehicle to a Ford dealership in Houston which in turn informed him that the vehicle had been leased to one Walter Traylor. He further testified that he at one time went to Arkansas with accomplice witness Gloria Caldwell, observed the appellant, returned to Brazoria County, gave testimony before the grand jury, and obtained an indictment against the appellant.

Walter Traylor of Houston testified that he rented a 1976 Ford LTD, License No. LXE–743, on March 11, 1976, and returned the vehicle on April 26, 1976. He testified that he let several people use the vehicle, including the appellant. He stated that the appellant requested his permission to use the rented vehicle because he had transmission problems with his own vehicle. The witness did not remember the precise dates on which the appellant had borrowed the car.

Eugene Carter, owner of Sportsman's Village, testified that he arrived at his cafe sometime after 4 p. m. on March 23, 1976. He testified that he observed four men and one woman at the trailer leased to Ronnie Kutzer. He stated he observed Gloria Caldwell's automobile, a silver-topped and gray-bottomed automobile, and a Ford van. He testified that he remembered two individuals because they were dressed differently than other customers in that they were wearing fine clothes or suits. These two individuals came into the cafe and requested permission to make long distance collect calls on his phone. The appellant made his call and said, "Everything is lovely. Made contact. Will call you tomorrow." The other individual with the appellant also made a phone call. Since neither the owner nor his wife recognized the two individuals and they were in constant fear of being robbed, he followed the two men to the white Ford van in front of the Ronnie Kutzer trailer while purporting to be working on his backhoe parked next to it. He observed four men working on the white Ford van as if "Putting radios or something in it." He stated three men were inside and one outside and that it appeared as if they were installing a CB radio. He obtained the license number of the white Ford van and requested a license check from the Brazoria County Sheriff's Office.

Lillian Carter, wife of Eugene Carter, testified that she also saw the two well-dressed men wearing light-colored leisure suits make their long distance collect phone calls from their cafe on the evening prior to the day of the robbery. She noticed the same cars in front of Ronnie Kutzer's trailer as did her husband as well as an additional silver pickup truck.· She testified that the vehicles were there at the time they closed their cafe, but only the van was there when they opened in the morning. She saw the silver car return with two men in it, although she could not identify them at that time. She testified that the same two men who made the phone calls were "standing out there the next day" near the trailer, although she did not state at what time during the day they were there. Between 10:30 and 11 a. m. on the day of the robbery, accomplice witnesses Bishop and Rucker came into the cafe and ordered food for the trailer. Later all the vehicles left, including the white van. The vehicles returned shortly later with two men in the van, two unidentified men in a silver and gray car, and accomplice witness Gloria Caldwell in her car. The witness testified that she observed accomplice witnesses Gloria Caldwell and Bishop carry brown grocery bags into the trailer, but identified no one else. The group took off, returned

shortly, and took off for the last time and never returned. All this activity occurred around 2 p. m.

In determining whether the State has satisfied the evidentiary obligation imposed on it by Article 38.14, supra, this Court excludes from consideration the accomplice witness testimony and reviews the balance of the record. *Lewis v. State*, 505 S.W.2d 603; *Dalrymple v. State*, 366 S.W.2d 576; *Bradford v. State*, 170 Tex.Cr.R. 530, 342 S.W.2d 319.

Upon reviewing the non-accomplice witness testimony, we must find incriminatory or inculpatory evidence which tends to connect the appellant to this aggravated robbery before we can conclude that the mandate of Article 38.14, V.A.C.C.P., has been satisfied. It is the combined, cumulative weight of such evidence that is to be considered and such evidence need not directly establish appellant's guilt to be sufficient. *Cherb v. State*, Tex.Cr.App., 472 S.W.2d 273; *Odom v. State*, Tex.Cr.App., 438 S.W.2d 912; *Edwards v. State*, Tex.Cr.App., 427 S.W.2d 629; *Anders v. State*, Tex.Cr. App., 501 S.W.2d 665; and *Minor v. State*, 108 Tex.Cr.R. 1, 299 S.W. 422.

The testimony of the complainant and her neighbor establishes commission of an offense and the use of the white van seen in Sportsman's Village. Proof of an offense alone is insufficient corroboration under Article 38.14, supra. *Odom v. State*, supra; *Edwards v. State*, supra; *Anders v. State*, supra.

The testimony of the Carters places appellant in the presence of the accomplice witnesses and the white van on the evening prior to and day of the robbery. That testimony also places appellant in the vicinity of the van while work was being done on it in the nature of installing a CB radio. There is no testimony as to his role, if any, in the work being done on the van. The van and trailer, wherein fruits of the offense were later found, were 15 miles from the scene of the offense.

The mere presence of the accused in the company of the accomplice shortly before or after the time of the offense is not, in itself, sufficient corroboration of the testimony of an accomplice. . . . *Nelson v. State*, Tex.Cr.App., 542 S.W.2d 175 at 177.

See also *Cherb v. State*, supra; *Rodriguez v. State*, Tex.Cr.App., 508 S.W.2d 80; *Thomas v. State*, 166 Tex.Cr.R. 331, 313 S.W.2d 311; *Roberd v. State*, 161 Tex.Cr.R. 188, 276 S.W.2d 270. However, other suspicious circumstances, in conjunction with mere presence, can satisfy the corroboration requirement of Article 38.14, supra. *Edwards v. State*, supra (appellant with accomplice witness near scene of and at time of offense, unusual hour, immediate flight, possession of victim's weapon the next day); *Cherb v. State*, supra (appellant left apartment with accomplice witness, returned with one of two types of bank bags victim used filled with coins, hid bag when person knocked); *Cawley v. State*, 166 Tex.Cr.R. 37, 310 S.W.2d 340 (appellant seen with accomplice witnesses on night of offense, escape from jail after indictment); *Rodriguez v. State*, supra (appellant seen across street from scene near time of offense among accomplice witnesses, matched description of one of the assailants); and *Ayala v. State*, Tex.Cr.App., 511 S.W.2d 284 (appellant seen with accomplice witness and deceased night of murder, flight). See also, generally, 23 C.J.S. Criminal Law § 812(4)g.

Appellant here was not identified as being present at or near the scene of the offense, but rather 15 miles distant at an undetermined time. No non-accomplice evidence indicates possession of or control over any fruits or instrumentalities of the offense. No flight to avoid apprehension or prosecution is shown.[1] The trailer in which the fruits and instrumentalities of the offense were found was leased to another party and there is no record indication of

---

1. Although the Brazoria County Sheriff testified he proceeded to Arkansas in the company of accomplice witness Caldwell and observed appellant, there is no evidence as to the time or circumstances surrounding this trip. Ms. Caldwell was not arrested for this offense until after accomplice witness Rucker had stood trial and received a life sentence.

appellant residing therein. See and cf. *Deal v. State*, Tex.Cr.App., 508 S.W.2d 355; *Harris v. State*, Tex.Cr.App., 524 S.W.2d 65. Appellant's presence in the vicinity of the trailer and van was not suspicious or incriminatory in nature. The corroborative evidence in *Johnson v. State*, 129 Tex.Cr.R. 430, 88 S.W.2d 108, was far more persuasive than that adduced here, yet this Court reversed that cause.

Finally, neither does the evidence tend to connect the appellant to the charged offense as a party who was criminally responsible for the conduct of the accomplice witnesses. Likewise, the evidence demonstrates mere presence in non-incriminatory or suspicious circumstances. The conduct described cannot be said to even tend to show appellant solicited, encouraged, directed, aided, or attempted to aid the accomplice witnesses in the commission of this offense with the specific intent of promoting its commission. See V.T.C.A., Penal Code, Section 7.02(a)(2).

We must conclude that on the record before us the State failed to present sufficient, non-accomplice evidence of an incriminatory nature that tends to connect the appellant to the offense charged and thereby corroborate the accomplice witnesses as required by law. See Article 38.14, supra; *Chapman v. State*, Tex.Cr.App., 470 S.W.2d 656; *Nelson v. State*, supra; *Harris v. State*, supra; *Deal v. State*, supra; *Johnson v. State*, supra; *Anders v. State*, supra; *Thomas v. State*, supra; *Windham v. State*, Tex.Cr.App., 479 S.W.2d 319.

Under *Burks v. U. S.*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), a determination by an appellate court that the evidence, as a matter of law, was insufficient to sustain the fact-finder's verdict bars any retrial of the appellant for the same offense.

The judgment of conviction is reversed and reformed to reflect an acquittal. The cause is remanded for proceedings under Article 37.12, V.A.C.C.P.

---

1. The conviction of Oscar Franklin Bowen in Cause No. 57,330, based on the same evidence, was affirmed September 20, 1978 in a per curiam opinion.

---

Before the Court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

On original submission this cause was reversed on the ground that the evidence was insufficient to corroborate the testimony of accomplice witnesses.[1] Two prior convictions were alleged for enhancement. The court assessed the punishment at life.

The record reflects that Gloria Caldwell overheard some conversation in her bar in Freeport which led her to believe that a large amount of cash was being kept in a safe in the private residence of Mr. and Mrs. Eddie Dyer. She conceived a plan to steal the money and enlisted the aid of two longtime friends, Joe Rucker and Kenneth Bishop. She also sought out someone who knew something about a safe and was placed in touch with Oscar Bowen by a pool hustler. Bowen agreed to participate in the plan and brought in an associate, Leo Rice, the appellant.

On March 26, 1976, two days before the robbery, all five of the parties met in Houston where they bought a police radio scanner and Bowen volunteered to provide a van to be used in the robbery. The following day, all met in a house trailer at a fishing camp in the vicinity of the Dyer residence, went over plans for the robbery and installed the police scanner in the white van provided by appellant and Bowen.

On the day of the robbery, all five of them met again in the house trailer and all left at the same time to commit the robbery. Bishop drove the white van with appellant, Bowen and Rucker with him and Gloria Caldwell drove her car to a designated place to act as a lookout. She was in contact with the van by C.B. radio and the van was in contact with appellant, Bowen and Rucker, all of whom went into the Dyer residence, by walkie talkie.

Rucker, who had disguised himself by wearing a pair of mirrored sunglasses and a black wig and darkening his moustache, entered the Dyer residence first and held a gun on Mrs. Dyer, a visiting neighbor and two children. Appellant and Bowen, both of whom were armed with pistols, came into the house shortly thereafter wearing ski masks. They took the contents of the safe found in the master bedroom closet and Mrs. Dyer's rings off her finger, tied up Mrs. Dyer, the neighbor, and the two children with tape and departed in the van. All five of them met back at the house trailer, argued violently over the apparent insignificant amount of money that was in the safe and left in different vehicles.

Bishop was arrested a few minutes later after he was observed driving the white van. He, Gloria Caldwell and Rucker all agreed to, and did, testify for the State against Bowen and appellant. Bishop and Gloria Caldwell each received two years' confinement and Rucker received twenty years in return for their agreement to testify.

Appellant contends in his sole ground of error that the evidence is insufficient to corroborate the testimony of the accomplice witnesses because at best the State's evidence shows nothing more than his presence with the accomplices before and after the time of the offense.

■ The trial court correctly instructed the jury that Caldwell, Rucker and Bishop were accomplice witnesses as a matter of law and that a conviction could not be had upon their testimony unless that testimony was corroborated by other evidence tending to connect appellant with the offense committed, and the corroboration was not sufficient if it merely showed the commission of the offense. See Article 38.14, V.A.C.C.P.

■ The well established test as to sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witnesses and then examine the other evidence to ascertain if it is of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise, it is not.

*Carrillo v. State*, 566 S.W.2d 902 (Tex.Cr. App.1978); *Brown v. State*, 561 S.W.2d 484 (Tex.Cr.App.1978); *Caraway v. State*, 550 S.W.2d 699 (Tex.Cr.App.1977); *Etheredge v. State*, 542 S.W.2d 148 (Tex.Cr.App.1976); *Bentley v. State*, 520 S.W.2d 390 (Tex.Cr. App.1975).

Further, in *Carrillo v. State*, supra, we quoted with approval the following from *Bentley v. State*, supra:

"The mere showing that an offense occurred is not sufficient corroboration. *Windham v. State*, 479 S.W.2d 319 (Tex. Cr.App.1972); *Reynolds v. State*, 489 S.W.2d 866 (Tex.Cr.App.1972). The combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses which tends to connect the accused with the commission of the offense supplies the test. *Perkins v. State*, 450 S.W.2d 855 (Tex.Cr.App.1970); *Windham v. State*, supra; *Colunga v. State*, 481 S.W.2d 866 (Tex.Cr.App.1972). It is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt, *Attwood v. State*, 509 S.W.2d 342 (Tex. Cr.App.1974); *Reynolds v. State*, supra; *Rainey v. State*, 401 S.W.2d 606 (Tex.Cr. App.1966); it need only make the accomplice's testimony more likely than not. *Warren v. State*, 514 S.W.2d 458 (Tex.Cr. App.1974)."

The testimony and evidence other than that provided by the accomplices Caldwell, Bishop and Rucker may be briefly summarized as follows:

Mrs. Dyer testified that she was robbed by three men in the early afternoon of March 24, 1976 and that three men were in her house for about twenty to thirty minutes. She was able to identify Joe Rucker as one of them in spite of his black wig, darkened moustache and mirrored sunglasses, but she could not identify the other two because each of them wore a ski mask. She heard another male voice on the walkie talkie on two occasions. Rucker was wearing blue coveralls, the other two wore jeans, and Rucker was wearing one surgical glove.

Mr. and Mrs. Carter, who operated a restaurant at the trailer park where the camp

trailer was located, testified that appellant was with the other four parties when they arrived at the camp trailer on the day before the robbery. Both testified that appellant and Bowen each made a collect long distance call on their telephone in the restaurant. Mr. Carter heard appellant's cryptic conversation which he testified consisted only of a statement to the effect that he had made contact, everything was lovely, and he would call the following night. The telephone conversation of Bowen was basically the same. Mr. Carter was suspicious of the men because of the odd telephone conversations and because they were overly dressed for where they were, and he went outside to pretend he was working on a piece of machinery so as to obtain the license number of the van. He did obtain the number and while there observed appellant and Bowen installing a radio in the van. He called the sheriff's office to have them check on the license number but received no immediate response to his inquiry. This van was identified as the one used in the robbery.

Mrs. Carter testified that on the day of the robbery she observed appellant and the other four parties arrive at the house trailer in the late morning, saw all of them leave together about noon and then return again about 2:00 p. m. At that time she saw them take what appeared to be three brown grocery-type bags from the vehicles into the house trailer. Appellant was not carrying one of the bags. All of them left a short time later and she saw no one at the trailer until the next day when the police officers came with a warrant to search it.

Police officers who searched the house trailer found personal papers which had been taken from the Dyers' safe in the robbery, some blue coveralls, a black wig, black eyelash makeup, moustache wax, a moustache wax brush with black wax on it, surgical gloves and a pair of mirrored sunglasses.

The owner of the white van testified that it was stolen in Houston two days before the robbery.

While appellant argues that the nonaccomplice evidence merely shows that he was present with the accomplices before and after the offense and that sufficient corroboration is thus not shown, we do not view the evidence in such a narrow manner. Appellant made a highly suspicious telephone call shortly after arriving at the trailer camp after looking over the scene, he was observed installing radio equipment in a stolen van which was used in the robbery, he left the trailer with the robbers shortly before the robbery, four men participated in the robbery, he returned with them shortly after the robbery and was present when the fruits of the robbery were brought from the vehicles into the house trailer.

We hold that the presence of appellant with the accomplices before and after the robbery, coupled with the other cited circumstances, is sufficient to corroborate the testimony of the accomplices. See *Nelson v. State*, 542 S.W.2d 175 (Tex.Cr.App.1976); *Johnson v. State*, 537 S.W.2d 16 (Tex.Cr. App.1976); *Ayala v. State*, 511 S.W.2d 284 (Tex.Cr.App.1974); *Cherb v. State*, 472 S.W.2d 273 (Tex.Cr.App.1971). This ground of error is overruled.

The State's motion for rehearing is granted; the judgment is now affirmed.

PHILLIPS, J., dissents for the reasons stated in the opinion on original submission.