**Edward KING, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–81–135–CR.**

Court of Appeals of Texas, Corpus Christi.

May 26, 1983.

Thomas G. Sharpe, Jr., Brownsville, for appellant.

Reynaldo Cantu, Crim. Dist. Atty., Brownsville, for appellee.

Before BISSETT, UTTER and GONZALEZ, JJ.

OPINION

BISSETT, Justice.

This is an appeal from a conviction for the offense of murder. Appellant Edward King (King) waived indictment and was tried before a jury based upon information. Appellant was convicted over his plea of not guilty and sentenced to serve ten (10) years in the Texas Department of Corrections.

Appellant, in his first and second grounds of error, challenges the sufficiency of the evidence to sustain the conviction of murder for the reasons: 1) "the accomplice testimony of Larry Knowlton was not corroborated"; and 2) "the testimony of Constance Jarbeck could not corroborate the testimony of Larry Knowlton since she was also an accomplice."

The facts relevant to the rendition of a final determination in this case are established through the testimony of four witnesses. They are Larry Knowlton, Constance (Connie) Jarbeck, appellant Edward King and Dr. David Flory.

Larry Knowlton had been granted full immunity for his testimony. He testified that on Tuesday, two days before Thanksgiving, 1979, he, along with King, Jarbeck, and another woman flew from Houston to Harlingen. There, they were met by Charles Dempsey, who had driven to Harlingen in his own car. Two cars were rented at the Harlingen airport. On Thanksgiving evening, Dempsey, Knowlton and King were driving around in one of the rented cars when a .22 pistol, owned by Dempsey, being played with by Knowlton, discharged inside of the vehicle. At the time, Dempsey was driving, Knowlton was riding in the front seat and King was riding in the back seat. While no one was injured by the shot, Dempsey became quite excited and insisted that they return to the motel. At the motel, Dempsey exited the vehicle and King moved to the driver's seat. Dempsey's .22 pistol, at King's insistence, was left in the car.

After depositing Dempsey at the motel, King and Knowlton continued to drive around. According to Knowlton, King be-

came enraged and insisted that Dempsey had only returned to the motel so that he could "try to put the make on Connie." King threatened to kill Dempsey. While the two were riding around, Knowlton said that appellant "picked up Mr. Dempsey's .22 pistol, which was in the seat, and was just incessantly cocking it and putting the hammer down ... and I was very scared." Knowlton said that he calmed King down by suggesting that the two of them go out and burglarize a certain house and get some diamonds that were reputedly in the house. When the house turned out to be occupied, they made no attempt to break in and King again became enraged. Finally, Knowlton suggested that they go to the home of Matt Mattson, and told King that he could "beat the hell" out of Mattson, because he owed Knowlton $500.00.

Knowlton also testified that he and King arrived at Mattson's house and asked Mattson to ride around in the car with them while they discussed a concocted deal for Mattson to fly Knowlton and King out of the Rio Grande Valley. King was still driving the car. Mattson directed him out "in the country." When Mattson asked to see the money he was to be paid for flying Knowlton and King out of the Valley, he was told that it was in the trunk of the car. Knowlton said that Mattson insisted on seeing the money so they stopped the car and all three of them got out of the car and walked back to the trunk. While Mattson was opening the trunk, King, according to Knowlton, shot Mattson in the "face or head," with the .22 pistol. Mattson then spun around, and Knowlton then fired at Mattson with his own gun, which he described as "an automatic," probably a "nine millimeter." Thereafter, they returned to the motel and Knowlton, Dempsey and Knowlton's girlfriend, proceeded to Houston that night in Dempsey's car. He said that King and Jarbeck arrived in Houston "maybe three or four hours" after they arrived in Houston.

Connie Jarbeck testified that Larry Knowlton contacted her about going to Lozano, Texas, and purchasing a house from him which they would later burn down and split the insurance proceeds. She testified that the Tuesday before Thanksgiving, she, King, Knowlton, and Knowlton's girlfriend left Houston and flew to Harlingen. There, they rented two cars and checked into a motel. She further testified that, on Thanksgiving night, around "8:00 or 9:00 o'clock ... Ed (King) came in the door and said, 'I had to kill him (Mattson). He moved, I shot him.'" Early the next morning, she and King packed up and drove the rented cars to the airport and flew into Houston. Once in Houston, they took a cab to Knowlton's house and "[s]at there and discussed exactly how [they] were going to tell this story." She also testified that she learned from Knowlton the "story" behind the shooting of Mattson.

Edward King, defendant-appellant, testified that while he, Dempsey and Knowlton were driving around on Thanksgiving evening, he heard a pistol shot. He did not know whether Dempsey or Knowlton "had the gun," but he was of the opinion that it was Knowlton. He said that he had never seen a weapon in the car prior to the time of the shot. It was agreed to take Dempsey back to the motel. King also testified that he saw Dempsey "reach up under the seat," and "as far as I know he put the pistol under the seat on the driver's side. I never did see the pistol or nothing else." He further testified that after they had driven Dempsey to the motel he and Knowlton drove to Mattson's house, picked him up and drove around and then stopped the car. King admitted that he was driving at the time. According to King, Knowlton and Mattson got out of the car, and Knowlton said to Mattson: "Come on, I want to show you something." They went to the back and King "heard the trunk open," and "an argument start." He then stated: "all of a sudden I heard two shots," and "while I was fixing to get out of the car," Knowlton said: "let's get out of here." They left the scene. King testified that he did not get out of the car. He said that he did not know that Mattson had been shot until he was arrested. He said that he did not actually see the shooting. When asked if

Knowlton had a gun "when he came back and got in the car," he answered: "I saw one gun at that point in time . . . it looked like a shotgun to me there." He also said that Knowlton told him that "Mattson had run off and he [Knowlton] said he didn't know if he hit him or not . . . he wanted to get out of there before, you know, he [Mattson] got somewhere to a phone so that the police wouldn't be after him."

King further testified that following their return to the motel, Knowlton gave Jarbeck the keys to the rented car and his credit card and told her to pay for everything. Jarbeck and King arose about 4:30 a.m. the next morning. They drove to the airport to check in the rented cars. They then flew to Houston and took a cab to Knowlton's residence.

Dr. David Flory, the physician who performed the autopsy of Mattson, testified that he found three bullet wounds in Mattson's body. "The first was in the left temple . . . . Another was in the anterior left chest. The third area of wounding was two perforated wounds of the right thigh, one of which appeared to be an entrance wound and another an exit wound." Dr. Flory testified that the cause of death was the wound in the head. He further testified that the wound in the area of the left chest, which pierced the abdomen, was a contributing cause of death, and that but for the bullet wound to the head, "might" have caused Mattson's death anyway. The bullet which caused the wound to the head was identified as coming from a .22 caliber gun. The bullet which caused the wound to the chest area was identified as a .32 caliber metal jacketed bullet. No bullet was introduced in connection with the wounding to the thigh.

It is established that the guns from which the bullets were fired into the deceased's body were thrown into a river. They were never recovered.

The trial court, in its charge, instructed the jury that the witness Knowlton was an accomplice witness as a matter of law and fully instructed them as to the corroboration necessary to convict defendant (appel-

lant) under the provisions of Tex.Code Crim.Proc.Ann. art. 38.14 (1979).

The standards by which an appellate court reviews a case built around accomplice testimony were set out in detail in *Bentley v. State,* 520 S.W.2d 390, 393 (Tex. Cr.App.1975). There is no need to restate those standards in this opinion, but we are guided by them in disposing of this appeal.

In *Edwards v. State,* 427 S.W.2d 629, 632 (Tex.Cr.App.1968), the Court said:

"The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain if there be inculpatory evidence, that is evidence of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise, it is not. *Dalrymple v. State,* Tex.Cr.App., 366 S.W.2d 576; *Bradford v. State,* 170 Tex.Cr.R. 530, 342 S.W.2d 319."

We apply that test to the case at bar.

In *Cawley v. State,* 166 Tex.Cr.R. 37, 310 S.W.2d 340 (Tex.Cr.App.1957), the Court held that an accomplice witness can be corroborated by circumstances. The Court further quoted with approval the rule announced in 22 C.J.S., Criminal Law § 812, pp. 1404–1405 (Revised in 23 C.J.S., Criminal Law § 812, (4) f., p. 118), which rule is stated as follows:

"Sufficient corroboration of the testimony of an accomplice to warrant a conviction may be furnished by the suspicious conduct of accused, such as flight after the crime was committed, . . . .

Proof that accused was at or near the scene of the crime at or about the time of its commission is admissible in corroboration of the testimony of the accomplice, and may tend to connect accused with the commission of the crime, so as to furnish sufficient corroboration to support a conviction when coupled with suspicious circumstances, such as . . . being in the

company of the accomplice, ... subsequent flight ...."

The question of whether Jarbeck was an accomplice witness was properly left to the jury to be decided by them as a matter of fact. *Arney v. State,* 580 S.W.2d 836 (Tex.Cr.App.1979). It is clear from the record that she was not at the scene of the shooting, and it is undisputed that she did not learn of the shooting until after the event had occurred. Both Knowlton and King testified that the events which led up to the Mattson shooting transpired after Jarbeck had been returned to the motel. She had nothing whatever to do with the purpose of contacting Mattson. A witness is not deemed an accomplice because he or she knew of a crime but failed to disclose or even concealed it. *Easter v. State,* 536 S.W.2d 223 (Tex.Cr.App.1976). Jarbeck did say that she helped destroy evidence and withheld information relating to the shooting. This, however, occurred after the shooting, and under those circumstances was not sufficient to establish that she was an accomplice, either as a matter of law or of fact, to the murder of Mattson. See *Kerns v. State,* 550 S.W.2d 91 (Tex.Cr.App. 1977); and, *In the Matter of M.L.,* 602 S.W.2d 550 (Tex.Civ.App.—Corpus Christi 1980, no writ).

Since the jury was properly instructed as to accomplice witnesses, we must conclude that they determined that Miss Jarbeck was not an accomplice witness. The jury was not unreasonable in so concluding.

It is well settled that appellant's admission or confession, under most circumstances, is sufficient to corroborate an accomplice witness. *Jackson v. State,* 516 S.W.2d 167, 171 (Tex.Cr.App.1974). Appellant admitted that he was at the scene of the shooting and in the company of Knowlton at the time Mattson was shot. He further admitted that he, while in the company of Knowlton, left the scene of the shooting. Both of those admissions tend to connect the appellant with the commission of the murder of Mattson under the authorities above mentioned and discussed. In particular, the fact that appellant and Knowlton immediately left the scene following the shooting may reasonably be considered as flight under the reasoning of the Court of Criminal Appeals as set out in *Edwards v. State,* supra at page 633. Moreover, appellant upon reaching the motel following the shooting, told Jarbeck, a nonaccomplice witness, that he had killed Mattson. The totality of appellant's admissions are sufficient to corroborate Knowlton's testimony. *Infante v. State,* 612 S.W.2d 603 (Tex.Cr.App.1981).

The jury in this case was given the choice of believing one of two stories: 1) that appellant shot Mattson as Knowlton asserted, or 2) that while appellant was present during the shooting, he took no part in it and knew nothing about it until sometime thereafter. Based upon the jury finding, we conclude that the jury believed Knowlton's version of the shooting. This was within their prerogative. The evidence is sufficient to support the conviction.

Appellant, in his third ground of error, says:

"The jury erroneously convicted the Defendant regarding conspiracy when the information did not charge conspiracy."

He argues that the court's charge, in effect, did not limit the jury's consideration to the theory of murder of the deceased by the appellant, as alleged in the indictment, in that "conspiracy to commit murder or conspiring with another as a principal was not charged in the information," and that the "charge placed the determination of guilt based on Edward King acting together with Larry Knowlton."

The information, in pertinent part, reads: "... that heretofore, to-wit, on or about the 22nd day of November, 1979 ... Edward King did then and there unlawfully, intentionally and knowingly cause the death of an individual, MATT COPELAND MATTSON, by shooting him with a gun ..."

Appellant does not specifically point out to us the portion of the charge which he says charged "conspiracy when the offense of murder." Apparently, he complains of

those paragraphs of the charge which read, as follows:

"3.

All persons are parties to an offense who are guilty of acting together in the commission of an offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense.

In this connection, however, the mere presence of a party at or near the scene of the commission of the offense does not make him a party to the offense. Likewise, mere knowledge that an offense is about to be committed by others will not make him a party to the offense, nor will his knowledge that the offense is being committed by others, or has been committed by others, nor will his failure to give alarm, his silence or inaction, make him a party to the offense.

4.

Now if you find and believe from the evidence beyond a reasonable doubt that on or about the 22nd day of November, 1979, in Cameron County, Texas, the Defendant, Edward King, acting together with Lawrence Knowlton, and as a party to the offense, as I have defined that term for you, did intentionally and knowingly cause the death of Matt Copeland Mattson by shooting him with a gun as alleged in the information, then you will find the Defendant guilty of murder.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant and say by your verdict 'Not Guilty.'"

If the evidence supports a charge on parties, as it does in the instant case, the court may charge on the law of parties even though there is no such allegation in the indictment. *LeDuc v. State,* 593 S.W.2d 678 (Tex.Cr.App.1980). Appellant's third ground of error is overruled.

The judgment of the trial court is AFFIRMED.